J.A19045/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.J.W., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| R.P.W., | : | |
| | : | |
| Appellant | : | No. 280 WDA 2014 |

Appeal from the Order Dated January 16, 2014
In the Court of Common Pleas of Allegheny County
Family Court No(s).: FD 11-007238-0016

BEFORE: BENDER, P.J.E., OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED SEPTEMBER 16, 2014**

Appellant, R.P.W. ("Mother"), appeals from the order entered in the Allegheny County Court of Common Pleas granting Appellee, J.J.W.'s ("Father") petition for modification of custody and relocation. Mother argues that the court erred in granting Father permission to relocate from Pittsburgh to Illinois and entering a custody order that is not in the best interest of their children, J.C.W., born in August of 1999, H.J.W., born in March of 2002, and P.C.W., born in August of 2005, ("Children"). Specifically Mother claims the court erred by failing to properly consider the statutory relocation factors, failing to hear testimony from Children, and

---

[*] Former Justice specially assigned to the Superior Court.

permitting Father to relocate to Illinois notwithstanding his failure to give

notice of his proposed relocation.[1] We affirm.

We adopt the facts and procedural history set forth in the trial court's

opinion. **See** Trial Ct. Op., 3/17/14, at 1-10. **See also** Findings of Fact,

1/16/14, at 2-34. Following a hearing, the court granted Father's petition

for modification of custody and relocation. Order, 1/16/14, at 1-5

(unpaginated). This timely appeal followed.[2] Mother and the trial court

complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review, which we have

reordered for ease of disposition:

> [1.] Did the trial court err and abuse its discretion when
> considering the relocation factors enumerated in 23
> Pa.C.S.[ ] § 5337?
>
> [2.] Did the trial court err and abuse its discretion by
> allowing Father to relocate [C]hildren from Pittsburgh to
> Glenwood, Illinois when Father never submitted a [n]otice
> of [p]roposed [r]elocation as required by 23 Pa.C.S.[ ] §
> 5337?
>
> [3.] Did the trial court err and abuse its discretion in
> entering a custody [o]rder that is not in the best interests
> of [C]hildren?
>
> [4.] Did the trial court err and abuse its discretion in
> entering an [o]rder that requires a stay-at-home Mother to

---

[1] Father appeared at the hearing with counsel. Mother appeared *pro se*.

[2] We note "[n]o motion for post-trial relief may be filed to an order of legal or physical custody." Pa.R.C.P. 1915.10(d).

travel from Pittsburgh, Pennsylvania to Glenwood, Illinois for the majority of Mother's custody time with [C]hildren?

[5.] Did the trial court err and abuse its discretion by failing to take testimony from [C]hildren prior to entering its [o]rder?

Mother's Brief at 3.

We address Mother's first and second issues together because they are interrelated. Mother claims the trial court abused its discretion in permitting Children to "relocate" to Illinois because Father failed to file a proposed notice of relocation and erred in its consideration of the relocation factors set forth in 23 Pa.C.S. § 5337. *Id.* at 12, 17. We find Mother is not entitled to relief.

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Initially, we observe that in any custody case decided under the Child Custody Act ("the Act"), the paramount concern is the best interests of the

J. A19045/14

child.  23 Pa.C.S. §§ 5328(a), 5338(a).  "[W]hen a party files a petition for modification of a custody order, the trial court must perform a 'best interests of the child' analysis considering all of the section 5328(a) factors."[3]  ***E.D. v.***

---

[3] Section 5328(a) provides:

> **(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

J. A19045/14

*M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011). "Under the Child Custody Act, however, trial courts must consider the ten factors listed in subsection 5337(h)"[4] when considering "whether it is in the best interest of the child to

> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> (11) The proximity of the residences of the parties.
>
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
>
> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
>
> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

[4] Section 5337(h) provides:

> **(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of **the child's relationship with the party proposing to relocate** and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) **Whether the relocation will enhance the general quality of life for the party seeking the relocation,** including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

move with the custodial parent outside of the jurisdiction . . . ." **Id.** at 79, 81 n.3; **see also C.M.K. v. K.E.M.**, 45 A.3d 417, 421 (Pa. Super. 2012). The Custody Act defines "relocation" as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S. § 5322(a).

Father lives in Glenwood, Illinois, and Children lived with Mother in Pittsburgh. On June 5, 2013, he filed a motion for special relief in which he requested, *inter alia*, primary physical custody of Children. On July 31, 2013, the trial court entered an order indicating that it would treat Father's motion as a petition for modification of custody and for relocation. Order, 7/31/13. In response to a prior petition to modify custody filed by Father, the trial court stated:

> The [c]ourt notes that this is not a traditional relocation case in that neither parent is seeking to move.[5] Father's request for primary physical custody, however, would require the children to move from Pittsburgh, Pennsylvania to Glenwood, Illinois, and said move would significantly impair the ability of Mother to exercise her custody rights. As such, this [c]ourt believes that Father's requested action falls within the definition of "relocation" as set forth in 23 Pa.C.S.[ ] § 5322. The [c]ourt must therefore analyze the ten (10) factors set forth in 23 Pa.C.S.[ ] §

---

> (10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h)(1)-(10) (emphasis added).

[5] We note that in the court's January 16, 2014 findings of fact, issued following the hearing on relocation and custody, the court stated: "Father himself is not relocating." Findings of Fact, 1/16/14, at ¶ 102.

> 5337(h) in evaluating Father's request for primary custody.

Findings of Fact, 12/11/12, at ¶ 68.

We disagree with the trial court's conclusion that Father's motion for special relief should have been treated as a petition for relocation. Our case law interpreting the Custody Act has construed the statutory language to apply to situations where a custodial parent seeks to physically relocate with the child. *See*, *e.g*, *C.M.K.*, 45 A.3d at 422 (holding **mother's proposed move** constituted relocation because it significantly impaired father's ability to exercise his current custodial rights (emphasis added)); *E.D.*, 33 A.3d at 74; *A.V. v. S.T.*, 87 A.3d 818, 819 (Pa. Super. 2014). However, in the instant case, both Father and Mother are "nonrelocating part[ies]," as Father continues to reside in the marital residence in Illinois and Mother continues to reside in Pittsburgh. *See* 23 Pa.C.S. § 5322(a). Accordingly, we conclude that Father's motion for special relief should not have been treated as a petition for relocation under the Custody Act. Therefore, Mother's claims that the trial court erred by overlooking Father's failure to file a notice of proposed relocation and considering the relocation factors is without merit. However, we hold the court properly construed Father's motion as a petition to modify custody.

For Mother's third issue on appeal she claims the trial court erred in determining that awarding Father primary custody of Children is in their best interests. Mother's Brief at 9. Specifically, she argues the trial court's

conclusions under each of the enumerated Section 5328(a) factors are not reasonable. *Id.* at 10. Mother alleges the trial court overemphasized her alleged failure to encourage Children to contact Father and "placed overwhelming focus on J.C.W.'s need for specialized schooling . . . ." *Id.* Mother is not entitled to relief.

Instantly, after careful review of the record, including the notes of testimony from the January 9, 2014 hearing, the parties' briefs and the well-reasoned decision of the Honorable Donald R. Walko, Jr., we affirm on the basis of the trial court's decision. *See* Trial. Ct. Op. at 18-22 (finding (1) Father more likely to encourage contact between Children and Mother; (2) Father would perform parental duties as primary custodian; (3) status quo harmful to Children's best interest; (4) Mother attempted to turn Children against Father; and (5) Mother unable to attend to special needs of J.C.W.). The trial court comprehensively addressed each of the Section 5328(a) factors and we discern no abuse of discretion by the trial court. *See C.R.F.* 45 A.3d at 443.

For her fourth issue, Mother claims the trial court erred by entering an order that requires her to travel from Pittsburgh to Illinois for the majority of her custodial time with Children.[6] Mother's Brief at 11.

---

[6] We note the trial court made the following, *inter alia*, findings of fact: "Father testified that he has worked as a flight attendant with United Airlines for twenty (25) years. Father further credibly testified that he is able to obtain low-cost buddy passes through his work if Mother ever wished to fly

The trial court opined as follows:

> The [c]ourt initially reminds Mother that this jurisdiction abides by a "best interests of the **child**" standard, not a "best interest of the **parent**" standard.
>
> The [c]ourt concluded in its January 16, 2014 [f]indings of [f]act that the best interest of [Children] would be served by providing Father with primary physical custody and Mother with extended periods of partial physical custody. The [c]ourt then considered how this custody arrangement could best be effectuated. As noted in the [c]ourt's [f]indings of [f]act, Pittsburgh, Pennsylvania and Glenwood, Illinois are approximately seven (7) hours and four (4) minutes apart by car. While the [c]ourt determined that Mother should be able to exercise custody of [ ] Children on as frequent a basis as Father was granted in the December 10, 2012 [o]rder of [c]ourt, the [c]ourt also determined that it would not be suitable for [ ] Children to be regularly transported back and forth between Illinois and Pittsburgh, as such travel would be a recurring, unreasonable disruption to their everyday lives.
>
> The [c]ourt, therefore, entered an [o]rder that provides that Mother may exercise custody of [ ] Children in Illinois every other weekend. During Mother's longer custodial periods (e.g., Spring Break, Summer Vacation, and holiday breaks), she is able to exercise custody of [ ] Children in Pittsburgh.

Trial Ct. Op. at 12-13 (emphasis supplied). We discern no abuse of discretion. *See **C.R.F.***, 45 A.3d at 443.

Last, Mother argues the trial court erred and abused its discretion by not taking Children's testimony at the January 9, 2014, hearing. With respect to this allegation of error, the trial court stated:

---

to the Chicago area to visit with [ ] children." Findings of Fact, 1/16/14, at ¶ 76.

The latest custody proceeding in this case occurred on January 9, 2014.[ ] The prior custody proceeding took place on November 15 and 16, 2012, approximately one (1) year and two (2) months before the more recent hearing. [A.P.W.] and [J.C.W.] testified at the first proceeding on November 16, 2012. When contemplating whether to interview [ ] Children at the January 9, 2014 proceeding, the Court determined that exposing the stress of another custody hearing to [ ] Children would not be in their best interest, especially in consideration of the short time period between the trials. **Nor did either party request that [ ] Children be interviewed or testify at the second custody proceeding.**

Trial Ct. Op. at 23 (emphasis added).

This Court has stated:

"Failure to timely object to a basic and fundamental error . . . will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The principle [sic] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error."

***M.O. v. J.T.R.***, 85 A.3d 1058, 1061 (Pa. Super. 2014) (citation omitted).

Mother did not raise this issue at the time of trial. Therefore, we find this issue waived. ***See id.***

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

- 11 -

Date: <u>9/16/2014</u>

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

J███ J. W█████,

         Plaintiff,

v.

R███ P. W█████,

         Defendant.

FAMILY DIVISION

Docket No.: FD 11-007238-016

Superior Court No.: 280 WDA 2014

## OPINION

WALKO, J.                                                  March 17, 2014

Defendant/Mother R███ P. W███ (hereinafter referred to as "Mother") appeals this Court's January 16, 2014 Order of Court. For the reasons set forth in this Opinion, this Order of Court should be affirmed.

## PROCEDURAL HISTORY

Plaintiff/Father J███ J. W███ (hereinafter referred to as "Father") and Mother were married on October 8, 1995. The parties separated in 2006 when Mother and the Children moved to Pittsburgh to be with Maternal Grandmother, and they were divorced by a Judgment for Dissolution of Marriage entered on February 8, 2011 in Cook County, Illinois ("Cook County Order"). The parties had four (4) children: A███ P. W███ (DOB: 1/██/96), J███ C. W███ (DOB: 8/9/99), H███ J. W███ (DOB: 3/██/02) and P███ C. W███ (DOB: 8/█/05). The Court only considered J███, H███ and P███ (hereinafter referred to as "Children") in this custody proceeding, as the Court lost jurisdiction over A███ due to her emancipation on January 24, 2014.

1

The Cook County Order provided Mother with primary physical custody of the Children, subject to Father's periods of "frequent and liberal visitation" as follows: July 1 to August 1 of each Summer Vacation period; alternating Spring Break periods starting in 2011; alternating Thanksgivings starting in 2012; and alternating Christmas/Winter holidays starting in 2011. The Order also guaranteed Father weekend visitation of the Children as his schedule permitted.

The Cook County Order further provided that the custodial parent was to at all times provide or make available to the non-custodial parent information regarding the Children's education including, but not limited to, schedules, grades, school activities, extracurricular activities and parent-teacher conferences. The Cook County Order also required the custodial parent to allow telephone contact between the non-custodial parent and the Children at least once a week for a reasonable period of time.

Father registered the Cook County Order in Allegheny County on June 9, 2011, pursuant to 23 Pa.C.S.A. §5445. On July 7, 2011 Father presented to the Court a Motion to Enforce the Cook County Order. In his Motion Father alleged that Mother refused to provide him with any information regarding the Children's education and extracurricular activities. Father also alleged that he was unable to exercise custody of the Children over Spring Break 2011 or begin his Summer custodial period on July 1, 2011 because Mother refused to engage in even minimal contact with Father. Mother did not appear to contest the Motion. The Court thereafter entered the July 7, 2011 Order of Court, which provided that Father was to have custody of the Children from July 18, 2011 to August 5, 2011, as well as Labor Day weekend. Father was also entitled to two (2) weeks of makeup time. The Order, lastly, granted Father $500 in counsel fees.

On August 4, 2011 Mother presented to the Court a Petition for Special Relief. Mother claimed in her Petition that she never received notice of Father's Motion heard by the Court on

2

July 7, 2011. Father presented an Answer and New Matter to Mother's Petition. Father first argued that Mother received notice of the July 7, 2011 Motion. In Father's New Matter he averred that Mother did not comply with the provisions of the July 7, 2011 Order of Court. Specifically, Father alleged that Mother failed to contact him even after she served him her Petition for Special Relief asking for reconsideration of the July 7, 2011 Order, and that Mother also failed to provide Father with information concerning the Children's medical conditions.

The Court denied Mother's Petition for Special Relief and entered the August 4, 2011 Order of Court, which provided that Father was to have custody of the Children from August 4, 2011 to August 15, 2011, as well as Labor Day weekend. The Order further provided Father with two (2) weeks of makeup time. Mother was also ordered to provide Father with an update of all of the Children's information. The Order granted Father an additional $250 in counsel fees.

On September 7, 2011 the Court entered an Order that scheduled a Custody Enforcement Conciliation for September 23, 2011. After the Custody Enforcement Conciliation the Court entered the September 23, 2011 Order of Court which, *inter alia*, provided that the February 8, 2011, the July 7, 2011 and the August 4, 2011 Orders of Court remained in full force and effect, that Mother was to provided Father with all information pertaining to the Children's medical and educational care, and that Father was to exercise custody of the Children over Winter Break 2011 pursuant to the February 8, 2011 Cook County Order. An additional $500 in counsel fees was awarded to Father.

On January 25, 2012 Father presented to the Court a Petition to Enforce Custody. Father again alleged that Mother failed to comply with the previous Orders of Court. The Court scheduled an expedited Judicial Conciliation for February 21, 2012 to address this issue. At the February 21, 2012 Judicial Conciliation the Court entered an Order that provided that Father

3

would have custody of the Children from March 30, 2012 through April 8, 2012 for Spring Break 2012 (pursuant to the February 8, 2011 Cook County Order), that Mother was to provide any authorizations necessary for Father to acquire all of the Children's medical, counseling and school records, that the parties would prepare and execute any documentation necessary to transfer the custody case from Cook County to Allegheny County, that a custody trial would be scheduled before the beginning of the 2012-2013 school year, and that all prior Orders of Court remained in full force and effect. A separate February 21, 2012 Order of Court required the parties to undergo psychological evaluations.

On March 28, 2012 Mother presented an Emergency Motion before the Honorable Cathleen Bubash to prevent Father from exercising custody over Spring Break 2012. Father presented an Answer and New Matter to Mother's Emergency Petition. Father's Petition was denied. It is believed that Mother's Motion was also denied, but said Motion and Order were not filed with the Department of Court Records.

Father presented to the Court a Motion to Enforce on April 23, 2012. Father alleged, *inter alia*, that Mother failed to communicate with Father about Spring Break 2012. Father also requested makeup time between the last week of June 2012 through the second week of August 2012 and for him and the Children to participate in counseling without Mother being present. Father also alleged that Mother continued to refuse to provide him with the Children's educational and medical records. Father requested additional counsel fees.

The Court thereafter entered the April 23, 2012 Order of Court. The Order provided that Father would pick up the Children on June 18, 2012 at 3:00PM at Family Resources in East Liberty to commence his custodial period, that Father would return the Children to Mother's residence on August 15, 2012, that Mother would turn over to Father all medical and educational

4

records that she had in her possession within twenty-four (24) hours, and that Mother would pay to Father $1,500 in counsel fees within forty-eight (48) hours.

Father again presented to the Court a Motion to Enforce on June 28, 2012. Father claimed that at the time of the Summer Vacation custody exchange Mother arrived with the Children, Maternal Grandmother, an off duty police officer and Mother's friend Lisa. Father alleged that Mother videotaped the exchange as A▓▓▓ refused to go with Father, and that Mother did nothing to encourage the Children to go with Father. Father also stated that the Children did not arrive at the exchange with any luggage. Since the exchange did not occur, Father only visited with the Children for one (1) hour at the Oakland Carnegie Library before he traveled back to Illinois. Father alleged that Mother stood over his shoulder the entire time during the one (1) hour visit.

Father also claimed in the June 28, 2012 Motion that he had discovered the following information: (1) that Alicia was not currently enrolled in Pittsburgh Public School, and that she had either dropped out or transferred schools; (2) that J▓▓▓ was in fourth grade at the Environmental Charter School, and that he should have been going into eighth grade for a child his age; (3) that H▓▓▓ was in third grade at the Environmental Charter School, and that he should have been going into fifth grade for a child his age; and (4) that P▓▓▓ was in first grade.

The Court then entered the June 28, 2012 Order of Court. The Order provided, *inter alia*, Father with primary physical and legal custody of the Children from June 28, 2012 to August 15, 2012. The Order also required Mother to comply with the previous Orders of Court by producing all information relating to the Children including but not limited to medical, educational and psychological care, and that Father was permitted to obtain counseling for the Children during his custodial time.

5

The Court entered an Order on July 16, 2012 that scheduled a two (2) day custody trial for September 20 and September 21, 2012. On August 10, 2012 Father presented to the Court a Motion for Special Relief wherein he requested the Court to grant him permission to file a Custody Modification Petition. Father also petitioned this Court to accept jurisdiction to modify the Cook County Order, in line with the parties' positions at the February 21, 2012 Judicial Conciliation. Mother presented an Answer to Father's Motion for Special Relief, wherein she claimed that Father only presented issues of enforcement of the Cook County Order to the Court, not issues of modification, and that Father was required to file a Complaint for Primary Custody. Mother, furthermore, also alleged that Illinois was required to relinquish jurisdiction of the custody matter before Pennsylvania was able to exercise jurisdiction over said matter.

Jurisdiction over this case was transferred from Cook County, Illinois to Allegheny County via a telephone conference with the Cook County Court on August 21, 2012. This Court entered an Order that same day, which set in writing the Court's acceptance of jurisdiction over this matter. The Order also provided that Father would be able to file his Petition for Modification with the Court, that Generations Education and Mediation sessions were waived for both parties, and that the custody hearing scheduled for September 20 and September 21, 2012 would be on the issues of contempt, Father's request for primary custody and Mother's request for a downward modification in Father's custodial time.

Father filed his Petition to Modify Custody on September 7, 2012, wherein he asked the Court for primary physical and legal custody of the Children. On September 7, 2012 Mother presented to the Court a Motion to Continue the Custody Trial. Mother averred, *inter alia*, that her counsel needed to obtain and review the Cook County records prior to engaging in the two (2) day custody trial. The Court then entered the September 7, 2012 Order of Court, which

6

continued the September 20 and 21, 2012 custody hearing to ensure Mother's receipt of the certified record from the Cook County Court. The hearing was rescheduled for November 15 and 16, 2012.

After the November 15 and 16, 2012 custody hearing the Court entered its Findings of Fact and Order of Court, dated December 10, 2012. The Order of Court provided, *inter alia*, Mother with primary physical custody of the Children and Father with partial physical custody of the Children. Father's periods of partial physical custody were every other weekend in Pittsburgh, beginning January 4, 2013, seven (7) days during the Children's Spring Break in Illinois, and July 1 to August 1 during the Children's Summer Vacation in Illinois. A▉▉ was provided the choice of whether or not to spend an overnight with Father in Pittsburgh or to travel to Illinois for Spring Break or Summer Vacation. The Order also laid out a holiday custody schedule. The Order further provided that Father and Mother were to share legal custody of the Children.

On January 11, 2013 Father presented to the Court a Motion for Clarification and Special Relief. In his Motion Father alleged that Mother failed to timely communicate with him about the Children's medical, educational and other information, that Mother stifled communication between him and the Children, and that Mother made it difficult for him to smoothly exercise his January 4, 2013 custodial period with the Children. Father also expressed his concerns about the Children's schooling.

The Court thereafter entered the January 31, 2013 Order of Court. The Order provided, *inter alia*, that both parties were permitted to speak with the Children individually, not on speaker phone, at a minimum of two (2) times per week, that on Sunday or Monday of every week Father would provide Mother with the dates that he anticipated contacting the Children for

7

the following week, that Mother and Father were to check Our Family Wizard on a daily basis and return any necessary replies within forty-eight (48) hours, that Father would be permitted to exercise custody of the Children in Pittsburgh from February 15, 2013 to February 18, 2013, and that Mother was to enter all of the medical and educational information for the Children in the Information Bank on Our Family Wizard within forty-eight (48) hours.

On June 5, 2013 Father presented to the Court a Motion for Special Relief, wherein he alleged that Justin was doing worse in school than he was at the time of the November 15 and 16, 2012 hearing. Specifically, Father alleged that J███ would be fourteen (14) years old in August 2013 and would be repeating the fourth grade in the 2013-2014 school year. Father requested that he immediately assume primary physical custody of J███ to work with him to get caught up in school. Father also averred that Mother failed to provide him with any medical information regarding the Children. Father additionally claimed that Mother continued to refuse to facilitate communication between him and the Children, and that the last time Father spoke to the Children was during his Spring Break custodial period in April 2013. Father, lastly, stated that it was becoming increasingly more expensive to exercise his custodial periods in Pittsburgh, and he requested that he exercise custody of the Children during the second half of the month of June in addition to his July custodial period to work with Justin on school issues and to spend time with H███ and P███.

The Court thereafter entered the June 5, 2013 Order of Court. This Order of Court provided that Father would assume custody of J███, H███ and P███ in accord with the Orders of December 10, 2012 and January 31, 2013, that Father would provide the time of the exchange to Mother via Our Family Wizard at least forty-eight (48) hours prior to the exchange, that Father would work with Justin during his custodial period on schoolwork, and that Mother

would within seventy-two (72) hours provide to Father via Our Family Wizard a detailed explanation of all medical care that the Children received since November 2012. The June 5, 2013 Order also scheduled a Conciliation for July 31, 2013 to further address the issues raised in Father's Motion.

At the July 31, 2013 Conciliation the Court entered an Order that provided that the Motion for Special Relief presented on June 5, 2013 would be deemed a Petition for Modification of Custody and for Relocation. The Order also scheduled a Conciliation for September 16, 2013 on all of the issues in dispute raised by either party pending the scheduling of a full relocation and custody modification trial. The Court additionally issued a Pretrial Order of Court on July 31, 2013. This Order of Court scheduled a one (1) day hearing for January 9, 2014. Father appeared at the hearing with counsel of record, and Mother appeared at the hearing pro se.

The Court took the testimony of Father and Mother at the one (1) day hearing, and it thereafter entered Findings of Fact and an Order of Court on January 16, 2014. The Order of Court grants Father's Petition for Modification of Custody and Relocation. More specifically, Father is provided primary physical custody of the Children, and Mother is provided substantial periods of partial physical custody of the Children including every other weekend in Illinois, seven (7) days during the Children's Spring Break, and one (1) month during the Children's Summer Vacation. A holiday schedule is also provided for in the Order. The parties are to share legal custody of the Children.

The Order, furthermore, reminds the parties to use Our Family Wizard to effectively communicate and manage their custody schedule. The Order also requires each party to inform the other of medical appointments, school functions and any other events involving the Children,

9

and each party is to upload into the Information Bank of Our Family Wizard all of the information regarding the Children's educational and medical care. Each party is permitted to have reasonable daily telephone and electronic contact with the Children when they are in the custody of the other party.

Mother filed a Notice of Appeal of the January 16, 2014 Order of Court and a Concise Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) on February 14, 2014.

## STANDARD OF REVIEW

The Pennsylvania Superior Court has stated its standard of review in child custody cases as follows:

> Our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *S.J.S. v. M.J.S.*, 76 A.2d 541, 547-8 (2013).

## DISCUSSION

Mother raises the following issues in her Concise Statement of Matters Complained of on Appeal:

> 1. The trial court erred and abused its discretion in entering a custody Order that is not in the best interests of the Children.
>
> 2. The Order and partial custody schedule awarded does not permit the Children to have frequent and continuing contact with [Mother].

10

3. The trial court erred and abused its discretion in entering an Order that requires [Mother] to travel from Pittsburgh, Pennsylvania to Illinois for the majority of [Mother's] time with her Children.

4. The trial court erred and abused its discretion by allowing [Father] to relocate the Children from Pittsburgh to Illinois when [Father] never filed a Notice of Proposed Relocation as required by 23 Pa. C.S.A. §5337.

5. The trial court erred and abused its discretion when considering the relocation factors enumerated in 23 Pa.C.S.A. §5337.

6. The trial court erred and abused its discretion when considering the custody factors enumerated in 23 Pa.C.S.A. §5328.

7. The trial court erred and abused its discretion by failing to take testimony from the Children prior to entering the Order.

**The Court entered a custody Order that is in the best interests of the Children.**
*(Matter Complained of on Appeal #1)*

Please refer to the Court's replies to Matters Complained of on Appeal #5 and #6, below.

**The Court entered an Order that permits the Children to have frequent and continuing contact with Mother.**
*(Matter Complained of on Appeal #2)*

In her Second (2nd) Matter Complained of on Appeal, Mother argues that the Order and partial custody schedule awarded does not permit the Children to have frequent and continuing contact with her.

Paragraphs 3, 4 and 5 of the January 16, 2014 Order of Court detail Mother's partial custody schedule. Mother may exercise custody of the Children every other weekend in Illinois. Mother is also to exercise custody of the Children as follows: in Pittsburgh for seven (7) days during the Children's Spring Break from school; in Pittsburgh from July 1 to August 1 during the Children's Summer Vacation; for the entirety of the Children's Thanksgiving Break in even numbered years; for a portion of the Children's Christmas Break every year; and every Mother's Day weekend. The Court took into consideration the considerable distance between Pittsburgh

11

and Illinois when crafting this schedule, and it holds that the schedule provides to Mother adequate substantial periods of physical custody of the Children.

Paragraph 16 of the January 16, 2014 Order of Court, furthermore, states: "Each party shall be permitted reasonable daily telephone and electronic contact with the Children while they are in the custody of the other party. Neither party shall restrict the Children's ability to call the other party." The Court holds that this provision sufficiently permits Mother to have frequent and continuing contact with the Children when they are in Father's custody. The Court determined that a provision in an Order that would permit *more* telephone and electronic contact than that already allocated to the parties in Paragraph 16 would be unfair to either party and an abuse of discretion.

### The Court did not err or abuse its discretion in entering an Order that requires Mother to travel from Pittsburgh to Illinois for the majority of her custody time with the Children. *(Matter Complained of on Appeal #3)*

In her Third (3rd) Matter Complained of on Appeal, Mother states that the Court erred and abused its discretion in entering an Order that requires her to travel from Pittsburgh to Illinois for the majority of her custody time. The Court initially reminds Mother that this jurisdiction abides by a "best interest of the *child*" standard, not a "best interest of the *parent*" standard.

The Court concluded in its January 16, 2014 Findings of Fact that the best interest of Justin, Peyton and Harrison would be served by providing Father with primary physical custody and Mother with extended periods of partial physical custody. The Court then considered how this custody arrangement could best be effectuated. As noted in the Court's Findings of Fact, Pittsburgh, Pennsylvania and Glenwood, Illinois are approximately seven (7) hours and four (4) minutes apart by car. While the Court determined that Mother should be able to exercise custody of the Children on as frequent a basis as Father was granted in the December 10, 2012 Order of

12

Court, the Court also determined that it would not be suitable for the Children to be regularly transported back and forth between Illinois and Pittsburgh, as such travel would be a recurring, unreasonable disruption to their everyday lives.

The Court, therefore, entered an Order that provides that Mother may exercise custody of the Children in Illinois every other weekend. During Mother's longer custodial periods (e.g., Spring Break, Summer Vacation, and holiday breaks), she is able to exercise custody of the Children in Pittsburgh.

**The Court did not err or abuse its discretion concerning the filing of a Notice of Proposed Relocation.**
*(Matter Complained of on Appeal #4)*

In her Fourth (4th) Matter Complained of on Appeal, Mother states that the trial court erred and abused its discretion because Father never filed a Notice of Proposed Relocation. The Court points to Paragraph 1 of the July 31, 2013 Order of Court, which was entered at the parties' July 31, 2013 Conciliation.[1] This Paragraph states that, "[Father's] Motion for Special Relief shall be deemed a Petition for Modification of Custody and for Relocation." This Paragraph, therefore, effectively waived the requirement that Father file a separate Notice of Proposed Relocation. Any argument by Mother that it was an error and abuse of discretion for the Court to allow Father to pursue modification of custody and relocation without filing a Notice of Proposed Relocation is moot, as she was properly made aware that Father's Motion for Special Relief was to serve the same purpose as this Notice.

**The Court properly considered the relocation factors enumerated at 23 Pa.C.S.A. §5337.**
*(Matter Complained of on Appeal #5)*

In Mother's Fifth (5th) Matter Complained of on Appeal, she states that the Court erred and abused its discretion when considering the relocation factors enumerated at 23 Pa.C.S.A.

---

[1] Both parties were represented by counsel at the Conciliation.

13

§5337. The Court holds that it properly considered these factors, and that it correctly determined the Children's best interest in light of these factors. While the Court finds that its analysis is explained in sufficient detail in its January 16, 2014 Findings of Fact, it summarizes its consideration of the relocation factors as follows:

§5337(h)(1): The nature, quality, extent of involvement and duration of the children's relationships with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the children's lives.

The Court concluded that the Children had a closer relationship with Mother by virtue of her position as primary custodian. The Court also found that Father had taken advantage of the opportunities provided to him to develop a better relationship with the Children since the entry of the December 10, 2012 Findings of Fact and Order of Court. The Court lastly found that the Children had a strong relationship with A█████ and with one another.

§5337(h)(2): The age, developmental stage, needs of the children and the likely impact the relocation will have on the children's physical, educational and emotional development, taking into consideration any special needs of the children.

The Court focused on J█████'s special needs in its discussion of this factor. J█████ was five (5) years behind in school at the time of the January 9, 2014 hearing. The Court found that Mother only obtained an Individualized Education Program ("IEP") Evaluation for J█████ after Father presented to the Court the June 5, 2013 Motion for Special Relief, and that Mother did not involve Father in the IEP process. Evidence was also presented to the Court that J█████ Nine (9) Week Progress Report for the 2013-2014 school year from the Pennsylvania Cyber Charter School was inconclusive, as the School could not initiate contact with Mother in order to schedule progress monitoring.

The Court, therefore, concluded that Mother had historically failed to adequately address J█████s academic issues. What made this finding even more troubling to the Court were

14

Mother's attempts to prohibit Father from obtaining knowledge about and taking an active part in Justin's education. Bolstered by these findings, the Court ultimately determined that Mother was simply unable to attend to Justin's educational needs.

The Court also concluded that Father would be better able to attend to J████'s special academic needs. Father testified that he planned to enroll J████ in an intervention program at a local Illinois school, which would provide J████ with specialized educational assistance. Father also testified that he would obtain an IEP and a tutor for J████ so that he would be able to begin high school. The Court further determined that Father would be able to attend to the educational needs of H████ and P████ based on his past efforts to remain up-to-date on their schooling.

§5337(h)(3): The feasibility of preserving the relationship between the nonrelocating party and the children through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

The Court found that it would not be feasible for the current relationship between Mother and the Children to continue to exist, as Mother would no longer be the Children's primary custodian. The Court, however, found that Father credibly testified that he would be able to obtain low-cost buddy passes for Mother for her trips to Illinois through his position as a flight attendant with United Airlines. The Court concluded that the availability of buddy passes for Mother's use in combination with periods of substantial partial custody awarded to her would permit her to continue to have a strong and loving relationship with the Children.

§5337(h)(4): The children's preference, taking into consideration the age and maturity of the children.

The Children did not testify at the hearing.

§5337(h)(5): Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the children and the other party.

15

In its December 10, 2012 Findings of Fact, the Court wrote that it was "very hopeful that Mother will recognize the importance of the Children having a relationship with Father. Mother is warned that any future failure to encourage that relationship will be looked upon with extreme disfavor." Mother did not impress this Court with any evidence that she had begun to promote the relationship between the Children and Father since the entry of the December 10, 2012 Findings of Fact. The Court, rather, found that she simply scoffed its warning.

As discussed at length in the January 16, 2014 Findings of Fact, Maternal Grandmother, likely in cooperation with Mother, unnecessarily involved the police during the first custody exchange that occurred pursuant to the December 10, 2012 Order of Court. Mother also continuously failed to provide Father with all of the Children's educational and medical information, despite the numerous Orders of Court requiring her to do so. For example, Father was not alerted that J█████ was scheduled to undergo a psychiatric evaluation with Western Psychiatric Institute's Obsessive Compulsive Disorder Clinic in March 2013. Nor were J████'s school workbooks or computer provided to Father at the initiation of his Summer 2013 custodial period, even though Mother was put on notice via the June 5, 2013 Order of Court that Father intended to assist J████ with his schoolwork during this time.

Father further informed the Court that it was often difficult for him to communicate with the Children when they were in Mother's custody, and that H██████ informed him that he and the other Children were not allowed to speak to Father about the things that they did while in Mother's care.

In light of the above, the Court reasonably concluded that Mother followed an established pattern of conduct designed to thwart the relationship between the Children and Father.

16

§5337(h)(6): Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

Since Father himself was not relocating, the Court did not further consider this factor in this matter.

§5337(h)(7): Whether the relocation will enhance the general quality of life for the children, including, but not limited to, financial or emotional benefit or educational opportunity.

The Court determined that relocation would provide J████ with a better educational opportunity, as he would be able to receive the special assistance that he required to succeed academically. The Court also determined that H██████ and P█████ would benefit from Father's demonstrated dedication to their academics.

§5337(h)(8): The reason and motivation of each party for seeking or opposing the relocation.

The Court found that both Mother and Father loved the Children, but that Mother demonstrated a baseless intent to prevent Father from exercising meaningful custodial time with the Children.

§5337(h)(9): The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the children or an abused party.

Mother consistently alleged that Father abused her and the Children in the past. Mother made these allegations to the Court, as well as during J████'s Western Psychiatric Evaluation and IEP Evaluation. Mother also alleged that Father neglected the Children, as they were afflicted with scabies when they returned into her custody after Father's Winter Break 2013-2014 custodial period. The Court did not find credible Mother's allegations of abuse or neglect. The Court also found that there was a history of the Children denying that Father abused them, either physically or verbally.

§5337(h)(10): Any other factor affecting the best interest of the children.

17

The Court found that the best interest of the Children had been fully considered through the preceding nine (9) factors.

The Court determined that Father met the burden of proving that relocation of the Children to Glenwood would be in their best interest. The Court made this determination by weighing the gravity of Mother's egregious behavior exemplified through its analysis of Factors (2), (5) and (9) against Father's demonstrated dedication to establishing a strong relationship with the Children and to bettering their educational, emotional and social development.

**The Court properly considered the custody factors enumerated at 23 Pa.C.S.A. §5328.**
*(Matter Complained of on Appeal #6)*

In Mother's Sixth (6th) Matter Complained of on Appeal, she states that the Court erred and abused its discretion when considering the custody factors enumerated at 23 Pa.C.S.A. §5328. The Court holds that it properly considered the custody factors enumerated at 23 Pa.C.S.A. §5328, and that it correctly determined the Children's best interest in light of these factors. While the Court finds that its analysis is explained in sufficient detail in its January 16, 2014 Findings of Fact, it summarizes its consideration of the custody factors as follows:

§5328(a)(1): Which party is more likely to encourage and permit frequent and continuing contact between the children and another party.

The Court referred to relocation factor (5) for its discussion of which party was more likely to encourage and permit frequent and continuing contact between the Children and another party. The Court concluded that Father was more likely than Mother to permit such contact.

§5328(a)(2): The present and past abuse committed by a party or a member of a party's household, whether there is a continued risk of harm to the children or an abused party and which party can better provide adequate physical safeguards and supervision of the children.

The Court referred to relocation factor (1) for its discussion of any present or past abuse committed by a party or a member of a party's household. As to which party could better provide

18

adequate physical safeguards and supervision of the Children, Mother asserted that Father was incapable of providing adequate supervision of J████ because Father was in denial of J████'s condition. Mother also asserted that Father's supervisory skills were inadequate, as he allowed J████ and H████ to ride their bicycles to a nearby park by themselves, and J████ wandered on to a highway. Father admitted that J████ found himself on a highway, but he further stated that the park in question was only half a block from his home, and that he reprimanded both J████ and H████ after the incident. In consideration of the testimony of the parties, the Court found this episode to be isolated in nature, and that it did not render Father incapable of providing sufficient physical safeguards to and supervision of the Children.

§5328(a)(3): The parental duties performed by each party on behalf of the children.

The Court referred to relocation factor (1) for its discussion of the parental duties performed by each party. The Court found that Mother performed more parental duties than Father because she was the Children's primary custodian and because she actively attempted to inhibit Father's ability to become involved in the Children's lives. The Court further found that Father performed parental duties during his periods of partial custody, and that Father would continue to perform parental duties as the primary custodian of the Children.

§5328(a)(4): The need for stability and continuity in the children's education, family life and community life.

The Court found that the need for stability and continuity in the Children's lives was greatly outweighed by J████'s need for specialized schooling and the Children's interest in developing and maintaining a strong bond with Father. The Court further found that the status quo the Children experienced with Mother was harmful to their best interest, and that Father would provide the Children with renewed stability and continuity in their lives in Glenwood.

§5328(a)(5): The availability of extended family.

19

The Court found that both parties had extended family available for the benefit of the Children in Pittsburgh and Illinois.

§5328(a)(6): The children's sibling relationships.

The Court referred to relocation factor (1) for its discussion of the Children's sibling relationships. The Court found that the Children had a strong relationship with A‌ and with one another.

§5328(a)(7): The well-reasoned preference of the children, based on the children's maturity and judgment.

The Children did not testify at the hearing.

§5328(a)(8): The attempts of a party to turn the children against the other party, except in cases of domestic violence where reasonable safety measures are necessary to protect the children from harm.

The Court referred to relocation factor (5) for its discussion of the attempts of a party to turn the Children against another party. The Court found that Mother consistently attempted to turn the Children against Father.

§5328(a)(9): Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for the children's emotional needs.

The Court found that this factor favored neither party. The Court specifically found that Father's custodial time with the Children since the entry of the December 10, 2012 Findings of Fact allowed him to begin and maintain a loving, stable, consistent and nurturing relationship with the Children adequate for the Children's emotional needs, and that Mother was able to maintain the same relationship with the Children.

§5328(a)(10): Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children.

20

The Court found that Mother was more likely to attend to the daily physical and emotional needs of the Children because of her role as the Children's primary custodian, but that Mother displayed to the Court her inability to the attend to the developmental, educational and special needs of J████. The Court further concluded that Father is just as capable as Mother of attending to the daily physical and emotional needs of the Children, and that he is more likely to attend to the developmental, educational and special needs of the Children.

§5328(a)(11): The proximity of the residences of the parties.

The Court concluded that a shared custody schedule would not be in the best interest of the Children because of the distance between the parties' residences.

§5328(a)(12): Each party's availability to care for the children or ability to make appropriate childcare arrangements.

Father informed the Court that his seniority as a flight attendant would allow him to carve his work schedule around the needs of the Children, but that he would likely need to hire babysitters or a nanny to watch the Children on occasion. Father further told the Court that his extended family members lived close by in Illinois, and that they would be available to care for the Children. Mother stated that she no longer worked as a flight attendant, and that she was always available to watch and care for the Children.

The Court considered this evidence, and it concluded that Mother was more available to care for the Children than Father because she did not work. The Court, however, also determined that Father's flexibility in his work schedule permitted him to be available for the Children, and that Father would be able to make appropriate childcare arrangements.

§5328(a)(13): The level of conflict between the parties and the willingness and the ability of the parties to cooperate with one another. A party's effort to protect the children from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

21

The Court found there to be a high level of conflict between the parties, and that they lacked the willingness or ability to cooperate with one another. Father entered into evidence the Our Family Wizard e-mail exchanges between the parties, which highlight the parties' often confrontational communications. For example, Mother once told Father that he required mental counseling. Father made similar hostile remarks to Mother including "way to be a great parent." The Court noted in its Findings of Fact that it feared that the best interest of the Children would fall by the wayside if the parties did not begin to communicate civilly with one another.

§5328(a)(14): The history of drug or alcohol abuse of a party or member of a party's household.

The Court determined that Mother's allegations that Father suffered from substance abuse were unsubstantiated. Father did not offer any information to the Court concerning drug or alcohol abuse committed by Mother.

§5328(a)(15): The mental and physical condition of a party or member of a party's household.

Neither party offered evidence regarding the other party's mental or physical condition.

§5328(a)(16): Any other relevant factor.

The Court found that the best interest of the Children had been fully considered through the preceding fifteen (15) factors.

Custody factors (1), (4), (8) and (10) weighed heavily in Father's favor. When the Court balanced these factors against the remaining custody factors, it determined that the Children's best interest would be served by awarding primary physical custody to Father with extended periods of partial physical custody to Mother.

**The Court did not err or abuse its discretion by not taking testimony from the Children prior to entering the Order.**
*(Matter Complained of on Appeal #7)*

22

In her Seventh (7th) Matter Complained of on Appeal, Mother asserts that the Court erred and abused its discretion by failing to take the testimony of the Children prior to entering the January 16, 2014 Order of Court.

The latest custody proceeding in this case occurred on January 9, 2014.[2] The prior custody proceeding took place on November 15 and 16, 2012, approximately one (1) year and two (2) months before the more recent hearing. A██ and J██ testified at the first proceeding on November 16, 2012. When contemplating whether to interview the Children at the January 9, 2014 proceeding, the Court determined that exposing the stress of another custody hearing to the Children would not be in their best interest, especially in consideration of the short time period between trials. Nor did either party request that the Children be interviewed or testify at the second custody proceeding.

The Court, furthermore, finds the case *Bovard v. Baker*, 775 A.2d 835 (Pa. Super. 2001) to be instructive in this matter.[3] In *Bovard*, Mother appealed the trial court's Order that provided Father with primary physical custody and Mother with partial physical custody of the parties' four (4) children. *Bovard*, 775 A.2d at 837. Mother's first issue on appeal was whether the trial court erred in failing to interview or receive testimony from the four (4) children, ages seventeen (17), fifteen (15), thirteen (13), and ten (10). *Id.* at 838. The Superior Court agreed with Mother on this issue:

---

[2] The January 16, 2014 Findings of Fact and Order of Court are based on the record of this hearing.

[3] The Court notes that the *Bovard* case was decided before the revisions to the Custody Act came into effect on January 24, 2011. 23 Pa.C.S.A. §5303(a)(1) of the prior law provided: "In making an order for custody or partial custody, *the court shall consider the preference of the child* as well as any other factor which legitimately impacts the child's physical, intellectual and emotional well-being (emphasis added)." 23 Pa.C.S.A. §5328(a)(7) of the revised Custody Act provides that the Court must consider "*the well-reasoned preference of the child*, based on the child's maturity and judgment (emphasis added)" in its determination of the best interest of the child when ordering any form of custody. Since both the old law and the current law require the Court to examine the preference of the child when making a custody determination, the Superior Court's reasoning in *Bovard* remains relevant today.

23

It is clear that the trial court struggled to make a decision in the face of two capable and loving parents. Under these particular circumstances, however, and given the ages of these children, we believe the court should have based its decision on as complete a record as possible. For that reason, we agree with Mother that it was an abuse of discretion for the trial court not to interview or take testimony from the children. *Id.* at 841.

The circumstances in this case differ from those in *Bovard*. The trial court in *Bovard* concluded that both parties were equally capable parents, and the law provides that "where the households of both parents are equally suitable, a child's preference to live with one parent 'could not but tip the evidentiary scale in favor' of that parent." *McMillen v. McMillen*, 602 A.2d 845, 848 (Pa. 1992). The Superior Court in *Bovard* accordingly found error in the trial court's decision not to interview the parties' children after it concluded that both parties were similarly apt parents, as the children's preference could have potentially served as a means to "tip the scale" in the favor of one party.

In the case *sub judice* this Court found that Mother persistently attempted to thwart Father's relationship with the Children since the entry of the December 10, 2012 Findings of Fact and Order of Court, despite the Court's warning to Mother in those Findings that any future failure on her part to encourage the Children's relationship with Father would be looked upon by the Court with disfavor. The Court also found that Mother was unable to attend to the developmental, educational and special needs of J████, and that Father was more likely to attend to these needs, as well as to the same needs of H████ and P████. The Court, in sum, did not find that both parties were equally capable parents, but that Father was a much more competent parent than Mother. As such, this case is distinguishable from *Bovard*, as it was clear to the Court that it would not be in the Children's best interest to be in Mother's primary custody regardless of their expressed preference.

24

To summarize, the potential negative impact on the Children from their testifying twice before the Court in a short span of time, the failure of either party to request that the Children be interviewed or testify at the January 9, 2014 hearing, and the factual findings and the conclusions of law drawn by the Court as a result of this hearing did not require the Court to hear testimony from the Children before the entry of the January 16, 2014 Order of Court.

For the foregoing reasons, this Court's January 16, 2014 Order of Court should be affirmed.

BY THE COURT:

_____, J.
Donald R. Walko, Jr., Judge

25