HODGE, J.,
Before the court for disposition is plaintiff’s petition for modification of custody and defendant’s petition to relocate. The plaintiff, Jordan F. Malinchak (hereinafter, “father”) and the defendant, Courtney Peterson (hereinafter, “mother”) are the natural parents of the minor child, Kira N. Malinchak, bom April 18, 2012. Father initiated the instant custody action on June 12, 2012 by filing a complaint in custody. Following a custody conciliation conference, an agreed upon custody order was entered whereby mother enjoyed *481 primary custody of Kira, subject to father’s partial custody on Monday and Wednesday evenings and overnights every Friday. On April 22,2013, father petitioned to modify the existing custody order to increase his periods of partial custody. Following another custody conference, father’s partial custody increased to overnight visitation every Wednesday evening and every weekend from Saturday at 10:00 a.m. until Sunday at 8:00 p.m., in addition to extensive summer and holiday visitation. Father filed a second petition for modification on August 4, 2014, wherein father requested primary physical custody of Kira. On October 27, 2014, mother filed a petition to relocate with the minor child to Austin, Texas. Father opposed mother’s relocation, and the court consolidated mother’s request to relocate and father’s request for primary physical custody for trial. The trial commenced on March 18, 2015 and took an additional three days to complete.
The court summarizes the testimony presented at trial as follows: Doctor Kirk Lunnen, a psychologist employed by people in need, conducted a custody and psychological evaluation of the parties. Dr. Lunnen’s evaluation consisted of multiple interviews with the parties, mother’s current husband, the paternal grandparents, and a home visit of mother’s residence and father’s residence. Dr. Lunnen ultimately opined that the best interests of the minor child would be served by implementing a fifty-fifty division of physical custody between the parties. Dr. Lunnen stated that he reached his conclusion after considering each party’s psychological evaluations, the parents’ relationship with the minor child, the close proximity of the parties’ residences, the ability of both mother and father to parent, and the parties’ available support systems. Dr. Lunnen further opined that the minor child is *482 developing appropriately and, so far, appears unaffected by the custody dispute between the parties.
Father is currently twenty-three years old. Father resides with his parents, Robin Malinchak and Francesco Terranova. Father attends college at Youngstown State University full time, and he does not work. Father is completely reliant upon his parents for all of his financial support, including his monthly child support obligation of $100.00. Father is pursuing a degree in criminal justice. Father aspires to become a police officer. Father attends class every weekday at 10:000 a.m., and typically finishes his courses in the afternoon.
Father and mother met in high school. They dated for approximately three years prior to mother becoming pregnant. Mother and father remained close, but they did not maintain an exclusive relationship. Father was present for Kira’s birth, and he tried to assist mother in caring for Kira following her birth. Father stated that he helped assemble Kira’s crib, purchased clothing and baby items for Kira and tried to assist mother in feeding, clothing and comforting their child.
Although father and mother tried to maintain a cordial relationship, their efforts were strained by the presence of mother’s current husband, Jeremy Mao. When father’s relationship with mother began to deteriorate, father filed a custody complaint in an effort to secure a steady visitation schedule between himself and Kira.
Mother notified father of her desire to move to Austin, Texas in the Fall of 2013. Father stated that mother was vague about her intentions, and she seemed to only be considering the idea. Father stated that the petition to modify custody, most recently filed, was not initiated by his fear that mother would move, but rather, because *483 father was concerned that the minor child was arriving at his residence with scratches, bug bites and lice on her body. Father stated that he felt mother was not keeping her home clean, and that the animals in mother’s residence were causing Kira’s ailments.
Kira’s paternal grandmother, Robin Malinchak, testified that Kira has her own room at her residence. Father is the primary caregiver for Kira when she is with father, but Mrs. Malinchak enjoys assisting father when Kira is with him. Mrs. Malinchak stated that she has serious concerns about mother’s household because Kira frequently came to her house with lice, bug bites, and severe rashes on her private parts. Mrs. Malinchak contacted Children and Youth Services of Lawrence County regarding her concerns and they proceeded to conduct an evaluation.
Gary Zarilla was the children and youth caseworker assigned to Kira’s case. Mr. Zarilla stated that when he initially visited mother’s residence, there was a lot of garbage and clutter. There were dishes piled up in the sink and several pets living in the house. Mr. Zarilla generally described mother’s house as “overwhelming,” but he did not observe any definitive safety concerns. Mr. Zarilla asked mother to try and improve the overall appearance and cleanliness of her house. Mother complied with Mr. Zarilla’s request, and the conditions were drastically remedied upon Mr. Zarilla’s follow-up visit. Mr. Zarilla did not initiate any dependency proceedings on Kira’s behalf.
Mother testified that she has been the primary care giver for Kira since Kira’s birth. Following Kira’s birth, mother returned to her mother’s residence and lived with maternal grandmother until mother obtained a residence with Jeremy Mao. Mother and Mr. Mao subsequently married *484 on August 28,2014 and had a child together on November 28, 2014. Mother stated that her desire to relocate is primarily based upon a job opportunity provided to her husband by her mother-in-law. Mother stated that she does not perceive father as being a good provider for Kira, considering the fact that father is completely dependent upon his parents for his financial needs. Mother believes that she and her husband could better provide for Kira if they relocated to Austin, Texas because her husband would be working for his family’s business and earning in excess of $3,000.00 per month.
Mother wishes to further her education and believes this could be more easily accomplished if she was permitted to relocate with Kira to Austin, Texas. Mother stated that she is amicable to the idea of living with her in-laws, and mother believes that Mr. Mao and his family could provide an adequate support system for her children subsequent to moving.
Jeremy Mao, mother’s husband, also testified on mother’s behalf. Mr. Mao is twenty-three years old. In addition to mother and Mr. Mao’s child, Mr. Mao stated that he loves and cares for Kira. However, Mr. Mao is also conscientious of his role as her step-father. Mr. Mao does not intend to replace father as a male figure in Kira’s life.
Mr. Mao would like to move with his family to Austin, Texas so that he could work for his mother in her family restaurant. Mr. Mao proposed that he and mother could move into his mother’s residence during their transition, and that they could save money to buy their own home. Mr. Mao believes that his family could provide an adequate support system for mother and her children.
In any custody proceeding, the court’s main concern is the most appropriate custody arrangements for the minor *485 child. 23 Pa.C.S.A. §5327(a); K.B. v. C.B.F., 833 A.2d 767, 771 (Pa. Super. 2003). In a custody contest, such as the case now before the court, where the dispute arises between two parents, the burden of proof is shared equally between the parties, as the court will not presume that custody should be awarded to a particular parent. Id.
In making a determination, the court bases its findings on how the best interests of the child may be served. Arnold v. Arnold, 847 A.2d 674, 677 (Pa. Super. 2004). It is axiomatic that the paramount concern in a child custody case is the best interests of the child, and the court makes its determination based upon a consideration of all factors legitimately affecting the child’s physical, intellectual, moral and spiritual well being. Id.
In addition to the testimony presented by the parties, a court must consider the statutory factors set forth at 23 Pa.C.S.A. §5337(h)(regarding relocation); see also C.M.K. v. K.E.M., 45 A.3d 417 (Pa. Super. 2012). The party proposing relocation has the burden of establishing that relocation will serve the best interest of the minor child, and each party has the burden of establishing the integrity of their motivation in seeking or opposing relocation. 23 Pa.C.S.A. §5337(i). The court will address each of the relocation factors in the following discussion.
(1) The nature, quality, extent of involvement and duration of the child’s relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child’s life.
Kira has a very strong relationship with mother and father. Mother has served as the primary caregiver since Kira was bom, but father has been actively involved in parenting Kira following her birth. The evaluation submitted by Dr. Lunnen establishes that Kira’s relationship *486 with each parent is healthy and well-established.
(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child’s physical, educational and emotional development, taking into consideration any special needs of the child.
Kira is presently three years old. She is developing normally and appropriately; and, therefore, has no special needs. The court does believe however, that Kira is old enough to be cognitive of the drastic changes relocating to Austin, Texas would create. Mother’s proposed relocation will permit mother to continue serving as Kira’s primary caregiver, and Kira is not old enough to experience a change in school system as a result of the move. The court is concerned about the emotional impacts that Kira could face because Kira has a very strong relationship with father and father’s family. This relationship would be negatively impacted by relocating because of the distance between New Castle, Pennsylvania and Austin, Texas.
(3) The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
This factor creates significant concerns for the court in evaluating mother’s request to relocate. Father currently enj oys custody of Kira every Wednesday evening and every weekend. The parties could never maintain such a liberal visitation schedule if mother moves with the minor child because of the distance and limited financial resources available to the parties. Although mother proposes that father could have extensive summer and holiday visitation, mother could not articulate a viable plan to pay for the child’s airfare or alternative transportation expenses. Even if the custody changes were effectuated, summer and *487 holiday visitation could not adequately perverse father’s relationship with Kira considering the fact that father typically sees Kira three to four days a week.
(4) The child’s preference, taking into consideration the age and maturity of the child.
Given the child’s young age, the parties did not offer the minor child’s testimony in support of their respective positions. Therefore, this factor is not before the court for consideration.
(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
There was insufficient evidence presented during these proceedings to warrant a finding that either party has tried to inhibit the minor child’s relationship with the opposing party. In fact the court received testimony that both father and mother place value on the other party in their parental role. The court reaches this conclusion despite father’s contention that mother has been verbally aggressive and oppressive during several custody exchanges. The court believes the disagreements sustained by the parties are not untypical of young parents who have opposing beliefs regarding custody of a mutual child.
(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
Mother’s proposed relocation is premised upon her husband’s desire to obtain employment at his family’s restaurant. Mr. Mao testified that his mother offered him a position as head chef/manager of her restaurant, which would be a substantial increase in wages for Mr. Mao. *488 Mr. Mao testified as to his efforts to obtain comparable employment in the Lawrence County and surrounding areas. Mr. Mao stated that he was only able to secure a job at Wal-mart making $9.20 per hour. Mr. Mao typically works thirty-three hours per week. Mr. Mao’s current income is inadequate to financially support all of his family’s needs, and Mr. Mao and Mother rely on medical assistance and food stamps.
Mother believes that if she could move her family to Austin, Texas, Mr. Mao’s increase in income could promote her family’s financial security. Mother even speculates that she might be able to attend college after they move and become stabilized.
In considering the benefits proposed by mother, the court believes that, other than the possibility of improved financial security, mother’s quality of life would not drastically change. Mother is currently a full-time caregiver for her two children and homemaker. This would not change if mother relocated. Mother’s support system is primarily based in the local areas, and she would be completely dependent on Mr. Mao’s extended family if they moved. If mother and Mr. Mao moved, they would be living with Mr. Mao’s parents until they secured enough savings to purchase their own home.
Additionally, the court believes that mother’s desire to attend college is not dependent upon moving, and that mother could fulfill her desire to further her education locally.
(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
The court’s analysis under this factor is very similar *489 to its preceding discussion under factor six. Kira clearly has the opportunity to enjoy increased financial stability through her family, but it comes at the cost of leaving a well established support system and relationship with father. Although mother did present testimony as to her proposed household and surrounding school district, the court cannot conclusively infer that either would be better than mother’s current household and the schooling currently available to Kira.
(8) The reasons and motivation of each party for seeking or opposing the relocation.
Mother’s desire to relocate is sincere; mother believes that if her husband can obtain better employment, mother and Mr. Mao could create a better lifestyle for their children.
Alternatively, father’s objections to mother’s relocation are sincere. Father believes that if mother moves to Austin, Texas with Kira he will not play a strong parental role in Kira’s daily life.
(9) The present and past abuse committed by a party or member of the party’s household and whether there is a continued risk of harm to the child or an abused party.
There has been no evidence regarding abuse committed by either party or that the minor child is at risk of harm in either household.
As indicated previously, in addition to mother’s request to relocate, father’s petition to modify custody is also pending before the court. In any custody proceeding, a court must consider the statutory factors set forth in 23 Pa.C.S.A. §532 8(a); see also B.K.M. v. 5 0 A.3d 16 8 (Pa. Super. 2012)(holding that “best interests of the child” analysis requires consideration of all Section *490 5328(a) factors). The court will address each of these factors in the following discussion.
(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
Father and mother both encourage and permit contact between the other party and the minor child. Father and mother have testified to times when they were able to modify the court ordered custody arrangements without incident, but father does become frustrated that mother is not willing to comply with father’s requests.
(2) The present and past abuse committed by a party or member of the party’s household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
There has not been sufficient evidence to warrant a finding of abuse committed by either party toward each other or the minor child.
(3) The parental duties performed by each party on behalf of the child.
Both mother and father perform all the necessary tasks associated with raising the minor child when they are exercising custody. Mother and father both play a strong role in caring for the minor child since the minor child’s birth. Mother and father both demonstrate a present willingness and capability to care for Kira.
(4) The need for stability and continuity in the child’s education, family life and community life.
The minor child has always lived primarily with mother, but father enjoys a liberal partial custody schedule. *491 The parties currently live very close to each other, and this provides for easier transitions during custody exchanges. Kira is less than three years old, so the court’s consideration of Kira’s need for stability and continuity is limited to Kira’s home life at mother’s residence and father’s residence.
(5) The availability of extended family.
Father has a very strong support system in the Lawrence County area. Father lives with his parents, who play a substantial role in Kira’s upbringing. Mother’s family support in Lawrence County is limited to maternal grandmother and mother’s current husband, Mr. Mao.
(6) The child’s sibling relationships.
Kira is the only child bom between the parties. Mother’s second child, L.M., bom November 28,2014 to her current husband, is Kira’s half-sibling. Although L.M. is very young, the testimony established that Kira enjoys being around her half-brother. Any custody arrangement entered must foster this relationship.
(7) The well-reasoned preference of the child, based on the child’s maturity and judgment.
Based on the child’s age, this factor shall not be considered by the court in reaching a determination.
(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
The testimony presented did not include sufficient evidence to support a finding regarding a party’s attempt to turn the child against the other parent. The court will not consider this factor in its determination.
*492 (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child’s emotional needs.
Both mother and father are able to provide the minor child with a loving and stable environment. Furthermore, the court is satisfied that both mother and father care for the minor child’s emotional needs while she is in their custody.
(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
Similar to the court’s determination under subsection nine, both mother and father are able to attend to the minor child’s daily needs. The court recognizes that father is extremely dependent upon his parents for his own physical, educational and financial needs, and thus, the minor child is also when she is in father’s custody. Alternatively, however, mother is dependent upon her husband because Mr. Mao is the only source of income in mother’s residence. The parties are extremely young and their dependence upon others is indicative of their youth.
(11) The proximity of the residences of the parties.
The parties currently reside within two city blocks from one another. Father and mother can easily walk to the other’s residence. This fact promotes a very liberal custody schedule, even when Kira becomes of school age because the parties reside in the same school district.
(12) Each party’s availability to care for the child or ability to make appropriate child-care arrangements.
The court is satisfied that both parties are able to care for the minor child while she is in their custody. Father’s *493 testimony establishes that father has a stronger support system because of his parents and extended family. Mother, however, can rely upon Mr. Mao for assistance, and after observing Mr. Mao during his testimony, the court finds Mr. Mao to be very sincere and dependable in this regard.
(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party’s effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
Each party testified that there can be high levels of conflict and poor communication between them. Mother has displayed poor temperament when communicating with father, which in turn causes father to be despondent. Mother and father have attended communication/co-parenting counseling, which helped them for a short period of time.
(14) The histoiy of drug or alcohol abuse of a party or member of a party’s household.
Father previously had one Driving While Under the Influence charge in 2013. Father completed the ARD program without further incident. Mother has no involvement with drug abuse or improper alcohol use.
(15) The mental and physical condition of a party or member of a party’s household.
Mother and father are both in good physical and mental health.
After reviewing all of the statutory factors pertaining to mother’s request to relocate, in addition to the statutory factors pertaining to father’s request for modification, the court determines that mother’s request to relocate must *494 be denied. The court bases its determination on the fact that Kira has a very well-established relationship with both father and mother. Kira enjoys regular and frequent contact with father and his extended family, and the court believes that any benefit bestowed by a relocation to Austin, Texas could not outweigh the detrimental impact suffered by limiting father’s relationship with Kira to summer and holiday visitation. In reaching this determination, the court further considered the case of C.M.K. v. K.E.M., 45 A.3d 417 (Pa. Super. 2012). In C.M.K., the Superior Court of Pennsylvania affirmed the trial court’s ruling that petitioner’s/mother’s request to relocate was not in the minor child’s best interest because the relocation would substantially impair the respondent’s/father’s ability to preserve his strong parental relationship with the minor child. Id. at 427. The court considered the fact that respondent/father was extremely involved in the minor child’s life and participated in many of the child’s daily activities. Id. Although petitioner’s/mother’s request to relocate was from Grove City, Pennsylvania to Erie, Pennsylvania, a distance of only 68 miles, the trial court held, and the Superior Court agreed, that such a move presented de minimis improvements to the minor child’s overall quality of life. Id.
Furthermore, the court finds that mother’s request is primarily premised upon Mr. Mao’s desire to pursue a career opportunity with his family’s restaurant. While mother’s objectives are sincere, the court is not satisfied that mother has exhausted reasonable alternatives to providing a more financially stable lifestyle for her family. Many of the additional benefits referenced by mother could be achieved locally and are not subjective to relocation entirely.
*495 Additionally, in evaluating father’s request to modify the current custody order, the court believes that a modification is not appropriate at this time. Father wishes to implement a 50-50 custody schedule; however, father has extensive commitments to his college education. Father attends classes daily, and the court cannot realistically implement an equal custody schedule knowing that father will not be available to care for Kira for substantial periods of time. The court believes that if father finishes college, he will be in a better position to achieving financial independence.
The court accredits mother with being Kira’s primary caregiver, and the court believes that in order to secure a consistent schedule, this arrangement should continue for a period of time. The court believes that the issues raised by each party during these proceedings should cause the parties to strongly re-evaluate some of their parenting choices, and hopes that, following the entry of this opinion, the parties could agree to begin a fresh start to their co-parenting and communication methods.
Consistent with this opinion, the court will enter the attached order of court.
ORDER OF COURT
And now, this 12th day of May, 2015, this case being scheduled before the court this date for a custody trial regarding plaintiff’s/father’s petition for modification of custody and defendant’s/mother’s petition to relocate, and after thoroughly reviewing the notes of testimony, in addition to the memorandums filed on behalf of the respective parties, the court hereby orders and decrees as follows:
1. Plaintiff’s/father’s petition for modification of custody is denied.
*496 2. Defendant’s/mother’s petition to relocate is denied.
3. The current custody order, entered on September 29, 2014 shall remain in full force and effect.
4. The prothonotary shall properly serve notice of this order by regular mail or personal service upon counsel of record for the parties and upon any unrepresented party at their last known address as contained in the court’s file.