**C.M.K., Appellant**

v.

**K.E.M., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 15, 2012.
Filed March 27, 2012.

---

3. Appellant's entire argument section of his brief is bereft of citation to case law. *See* Appellant's brief at 11–14.

Margaret T. Lucas, Mercer, for appellant.

Ryan K. Bonner, Grove City, for appellee.

BEFORE: BOWES, OLSON, and PLATT*, JJ.

OPINION BY OLSON, J.:

Appellant, C.M.K. ("Mother"), appeals from the order entered on August 18, 2011, denying her petition for relocation and a related request to modify the terms of custody for the parties' minor son, C.D.M. (born September 29, 2004) ("Child"). After careful review, we affirm.

The trial court set forth the factual background and procedural history of this case as follows.

> [Mother] ... was born on August 12, 1970 and resides ... in Grove City, Mercer County, Pennsylvania where she has lived since May of 2010. [Mother] resides in an apartment over a two-car garage with [Child]. [K.E.M.] ("Father") is 41 years old and resides ... in

Grove City, Mercer County, Pennsylvania with his paramour, T.W., and her 13[-] year[-]old son, both of whom moved in with [Father] in February of 2010. [Mother] was raised in Conneaut, Ohio, where she attended high school[,] but she also resided in nearby Albion, Pennsylvania. [Mother] and [Father] were never married to each other but resided together from January of 2004 to July of 2008 and they lived together with [Child] in Grove City, Pennsylvania. [Mother] is an insurance agent with a Pennsylvania license with the Moore Insurance Agency in Grove City and has been so employed since November of 2004[.] When [Mother] and [Father] lived together, both parents performed parental duties and would take [Child] to the doctor's office when their schedules permitted.

[Mother] filed a *pro se* Complaint for Custody originally on November 24, 2008 when [Mother] and [Father] lived two blocks from each other and they entered into a consent custody order at a Master's conference by order dated December 10, 2008 wherein they agreed to share legal custody with primary physical custody in [Mother] subject to periods of [Father's] partial custody generally as they had already been practicing.

[Mother] then filed a *pro se* Petition for Modification on May 25, 2010 seeking a more specific custody order from the December 10, 2008 order. [Mother] and [Father] again entered into a consent order when they appeared *pro se* before the custody Master resulting in a July 9, 2010 order where they continued to share legal custody but Father's periods of partial custody were set forth with more particularity on an every other

* Retired Senior Judge assigned to the Superior Court.

weekend schedule from Fridays at 6:00 p.m. through Sundays until 8:30 p.m. and every Wednesday from 6:00 p.m. until 8:30 p.m. as well as a holiday schedule.

[Mother] sent a notice dated June 2, 2011 of a proposed relocation to Albion, Erie County, Pennsylvania to [Father] and [Father] signed his counter-affidavit objecting to relocation on June 27, 2011.

\* \* \*

[Child] is currently in the second grade in Grove City, Mercer County school system where he enjoys school and has many friends. [Child] is involved in T-ball, soccer and hockey and both parents attend when their schedules allow. [Child] may be a gifted [student] and may be placed into a gifted program. [Father] regularly exercises his periods of partial physical custody and is actively involved in [Child's] life, school activities and extra-curricular activities.

[Mother] has located a three-bedroom mobile home with two baths on 2.5 acres near the Borough of Albion which is approximately 68 miles from where [Father] resides. [Child] would attend school at the Northwestern School District which is smaller than the Grove City School District[.]

[Mother] denies that she is moving to live with a man or to get closer to any particular person[.]

Trial Court Opinion, 11/1/11, at 1–5.

At the relocation hearing, Mother, Father, and Father's girlfriend, T.W., testified. Following the hearing, the trial court, on August 18, 2011, denied Mother's petition for relocation and modification of the parties' existing custody agreement. The trial court concluded that, in serving notice of a proposed move and requesting a hearing on her petition to relocate with Child, Mother tacitly conceded that her proposed move involved relocation. The trial court also determined that Mother's proposed move constituted relocation because it involved change that would significantly impair Father's ability to exercise his current custodial rights. Lastly, the trial court found that Mother did not meet her burden of proving that relocation with Child would be in Child's best interest. Thereafter, Mother filed a timely notice of appeal on September 8, 2011. On the same date, Mother filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued its Rule 1925 opinion on November 1, 2011.

In her brief on appeal, Mother raises three issues for our review:

1. Did the trial court err in failing to find that the proposed move would not significantly impair the ability of the nonrelocating [sic] party to exercise his custodial rights?

2. Did the trial court err in failing to find that the Appellant's testimony and evidence including evidence of present and past abuse perpetrated by the Appellee on the Appellant and the evidence of the benefits to be gained by the move was adequate to meet the burden of showing that the relocation would serve the best interests of the Child?

3. Did the trial court err in focusing on Appellee's participation in the Child's sporting activities and disregarding the emotional, social and economic benefits the Child and Appellant would enjoy if permitted to relocate?

Mother's Brief at 4.

All three claims advanced in Mother's appeal challenge the trial court's custody order denying her petition for relocation and related request to modify the

parties' custody agreement. We review such custody determinations under the following scope and standard of review.

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.*, 33 A.3d 73, 76 (Pa.Super.2011) (citation omitted). With any child custody case, this Court has long stated that the paramount concern is the best interests of the child. *Landis v. Landis*, 869 A.2d 1003, 1011 (Pa.Super.2005). This standard requires a case-by-case assessment of all of the factors that may legitimately affect the "physical, intellectual, moral and spiritual well-being" of the child. *Id.* When a custody dispute involves a request by a party to relocate, we have explained, "there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." *Baldwin v. Baldwin*, 710 A.2d 610, 614 (Pa.Super.1998).

Recently, our Legislature adopted a new Child Custody Act ("Act"), which became effective on January 24, 2011. *See* 23 Pa. C.S.A. §§ 5321–5340. The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law. 23 Pa.C.S.A. § 5321. In *E.D., supra*, we held that the Act applied to any proceeding, including a petition for relocation, initiated by a filing made after the effective date of the Act, even though the original complaint or action was commenced prior to that date. As Mother's petition for relocation and modification was filed on June 2, 2011, the principles and directives contained in the new Act apply to the instant case.

In her first issue, Mother alleges that the trial court erred in finding that her proposed move must be deemed "relocation" within the meaning of the Act. Mother's position is that the trial court should have first determined whether the move fell within the definition of relocation by comparing Father's periods of partial custody under the current schedule with his custody time under Mother's proposed modifications to the schedule. Applying this approach, Mother asserts that she offered an additional 21 hours of partial custody time for Father and that, since there was no reduction in Father's overall time with Child, the proposed move did not constitute "relocation" under the new Act. Mother further points out that the proposed revised custody schedule "would not only increase Father's total hours[,] it would permit him more quality time with his son[, including an] additional Friday through Saturday[,] rather than the brief and rushed couple of hours [Father] now has on Wednesday evening." Appellant's Brief at 9. Given the additional quantity and quality of time Father would have with Child under Mother's proposed custody schedule, Mother claims that the move to Albion would not significantly impair the ability of Father to exercise his custodial rights and, therefore, was not "relocation" under the act.

"Relocation" is defined under the new Act as "[a] change in residence of the child which significantly impairs the ability of a non-relocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a). In its Rule 1925 opinion, the trial court offered two separate grounds for concluding that Mother's proposed move involved relocation within the contemplation of § 5322(a). First, the trial court concluded that, in serving notice of an impending move and requesting a hearing on her petition for court approval to move to Albion, Mother tacitly conceded that her proposed move involved relocation. Trial Court Opinion, 11/1/11, at 12. Next, the trial court determined that Mother's proposed move constituted relocation because it would significantly impair Father's ability to exercise his current custodial rights. Id. at 14–15.

While we agree with the trial court that Mother's proposed move constitutes relocation within the meaning of § 5322(a), we do so solely on the ground that the proposed relocation threatened significant impairment of Father's ability to exercise his custodial rights. As we shall explain below, we do not endorse the court's alternate conclusion, which theorized that Mother tacitly conceded relocation merely by serving notice of a proposed move and requesting a hearing on her petition to relocate.

Pursuant to the new Act and the trial court's order of June 1, 2011, both Mother and Father followed proper procedures in bringing the issue of relocation to the trial court for its review. The record indicates that the trial court issued an order dated May 27, 2011, and entered on June 1, 2011, stating that "neither party shall relocate outside of Mercer County or remove Child from the Mercer County Court of Common Pleas except for short tips [sic] and vacations" without further order of the trial court. Trial Court Order, 6/1/11, at 2. On June 2, 2011, Mother filed a notice of proposed relocation, as required by § 5337(c) of the new Act.

In her notice of proposed relocation, Mother expresses her desire to move from her current residence in Grove City, Mercer County, Pennsylvania, to Albion, Erie County, Pennsylvania. Mother's notice provides the necessary information including the address of her new residence in the Albion area, the name of the school district and school, the date of the proposed relocation, the reasons for relocation, a proposed revised custody schedule, and a warning for Father to file a counter-affidavit.

In response to Mother's notice, Father filed a counter-affidavit objecting to the relocation of Mother and Child. In his counter-affidavit, Father claims that relocation will prevent him from maintaining the close relationship and contact he presently has with Child, including participating in Child's sporting activities and other school activities, meetings with teachers and other school authorities, and medical appointments. Father also asserts that the move would severely impair Child's relationship with Father's family, who also live in the Grove City area, i.e., Father's father, Father's stepmother, and other members of Father's extended family. Presently, Father's family is able to see and interact with Child several times a week.

Section 5337 sets forth the procedures for giving notice of a proposed relocation, objecting to a proposed relocation, confirming relocation, modifying custody orders within the context of relocation, and conducting a hearing on the proposed relocation. In relevant part, it states:

§ 5337. Relocation

(a) Applicability.—This section applies to any proposed relocation.

**(b) General rule.**—No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2) the court approves the proposed relocation.

**(c) Notice.**—

(1) The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

(i) the 60th day before the date of the proposed relocation; or

(ii) the tenth day after the date that the individual knows of the relocation, if:

(A) the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60–day notice; and

(B) it is not reasonably possible to delay the date of relocation so as to comply with the 60–day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i) The address of the intended new residence.

(ii) The mailing address, if not the same as the address of the intended new residence.

(iii) Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv) The home telephone number of the intended new residence, if available.

(v) The name of the new school district and school.

(vi) The date of the proposed relocation.

(vii) The reasons for the proposed relocation.

(viii) A proposal for a revised custody schedule.

(ix) Any other information which the party proposing the relocation deems appropriate.

(x) A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi) A warning to the nonrelocating party that if the nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

**(d) Objection to proposed relocation.**—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation. The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not. If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-

affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), in substantially the following form:

COUNTER–AFFIDAVIT REGARDING RELOCATION

This proposal of relocation involves the following child/children:

| Child's Name | Age | Currently residing at: |
|---|---|---|
| .................... | .......... | .................... |
| Child's Name | Age | Currently residing at: |
| .................... | .......... | .................... |
| Child's Name | Age | Currently residing at: |
| .................... | .......... | .................... |

I have received a notice of proposed relocation and

1. ... I do not object to the relocation and I do not object to the modification of the custody order consistent with the proposal for revised custody schedule as attached to the notice.

2. ... I do not object to the relocation, but I do object to modification of the custody order, and I request that a hearing be scheduled:

a. ... Prior to allowing (name of child/children) to relocate.

b. ... After the child/children relocate.

3. ... I do object to the relocation and I do object to the modification of the custody order, and I further request that a hearing be held on both matters prior to the relocation taking place.

..................................

I understand that in addition to checking (2) or (3) above, I must also file this notice with the court in writing and serve it on the other party by certified mail, return receipt requested. If I fail to do so within 30 days of my receipt of the proposed relocation notice, I shall be foreclosed from objecting to the relocation.

..................................

I verify that the statements made in this counter-affidavit are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

Date:

..................................

..................................

(2) An objection made under this subsection shall be filed with the court within 30 days of receipt of the proposed relocation notice and served on the other party by certified mail, return receipt requested.

(3) If notice of the proposed relocation has been properly given and no objection to the proposed relocation has been filed in court, then it shall be presumed that the nonrelocating party has consented to the proposed relocation.

(4) If a party who has been given proper notice does not file with the court an objection to the relocation within 30 days after receipt of the notice but later petitions the court for review of the custodial arrangements, the court shall not accept testimony challenging the relocation.

**(e) confirmation of relocation.**—If no objection to the proposed relocation is

filed under subsection (d), the party proposing the relocation shall file the following with the court prior to the relocation:

(1) an affidavit stating that the party provided notice to every individual entitled to notice, the time to file an objection to the proposed relocation has passed and no individual entitled to receive notice has filed an objection to the proposed relocation;

(2) Proof that proper notice was given in the form of a return receipt with the signature of the addressee and the full notice that was sent to the addressee.

(3) a petition to confirm the relocation and modify any existing custody order; and

(4) a proposed order containing the information set forth in subsection (c)(3).

**(f) Modification of custody order.**—If a counter-affidavit regarding relocation is filed with the court which indicates the nonrelocating party both has no objection to the proposed relocation and no objection to the modification of the custody order consistent with the proposal for revised custody schedule, the court may modify the existing custody order by approving the proposal for revised custody schedule submitted under subsection (c)(3)(viii), and shall specify the method by which its future modification can be made if desired by either party. If a counter-affidavit regarding relocation is filed with the court which indicates the nonrelocating party objects either to the proposed relocation or to the modification of the custody order consistent with the proposal for revised custody schedule, the court shall modify the existing custody order only after holding a hearing to establish the terms and conditions of the order pursuant to the

relocation indicating the rights, if any, of the nonrelocating parties.

**(g) Hearing.**—

(1) Except as set forth in paragraph (3), the court shall hold an expedited full hearing on the proposed relocation after a timely objection has been filed and before the relocation occurs.

(2) Except as set forth in paragraph (3), the court may, on its own motion, hold an expedited full hearing on the proposed relocation before the relocation occurs.

(3) Notwithstanding paragraphs (1) and (2), if the court finds that exigent circumstances exist, the court may approve the relocation pending an expedited full hearing.

(4) If the court approves the proposed relocation, it shall:

(i) modify any existing custody order; or

(ii) establish the terms and conditions of a custody order.

23 Pa.C.S.A. § 5337(a)–(g).

■ We have carefully reviewed the relevant provisions of the Act. Based on our review, we discern no basis in the statutory text for the trial court's conclusion that a party who serves notice of a proposed move and who then files a petition for relocation and requests a hearing either tacitly, or otherwise, concedes that a proposed move involves "relocation" within the meaning of § 5322(a). Here, Mother served notice of her intent to move with Child. Father responded with an objection. Mother then filed a petition for relocation and requested a hearing. Based on the facts of record, together with our reading of the statutory scheme, a relocating party who serves notice of a proposed move may request a hearing to litigate all issues surrounding relocation (including whether the move itself constitutes reloca-

tion under § 5322(a)) if the non-relocating party objects to the proposed move, as occurred in the present case. Thus, contrary to the conclusion reached by the trial court, Mother's request for a hearing on her petition neither foreclosed litigation on the issue of relocation nor did it raise a presumption that her proposed move constituted relocation under § 5322(a). We therefore reject this aspect of the trial court's analysis.

■ We agree, however, based on a thorough review of the record and the relocation factors contained in § 5337(h), as discussed below, that the trial court correctly determined that Mother's proposed move significantly impairs Father's ability to exercise his custodial rights. The trial court discerned that Child enjoys a very close relationship with Mother and Father, and that Father "has had regular and continued involvement co-parenting in different aspects of the minor child's life that go beyond his periods of partial physical custody." Trial Court Opinion, 11/1/11, at 14. Competent record evidence reveals Father's active involvement in Child's sporting events, including baseball and street hockey at this time, and his desire to coach Child. N.T., 8/18/11, at 76–80. The evidence also shows that Father is involved in school activities, including meetings with teachers and school authorities, and medical appointments. N.T., 8/18/11, at 76–77. Father, who is an equipment operator, is able to arrange his schedule in order to attend many of Child's school and sports functions. *Id.* at 7, 8, and 15. The record confirms the trial court's conclusion that Mother's proposed relocation would break the continuity and frequency of Father's involvement with Child and therefore threatens significant impairment of Father's ability to exercise

his custodial rights. Mother's offer of additional custodial time for Father would not ameliorate these adverse effects. *See* 23 Pa.C.S.A. § 5337(h)(3). Accordingly, Mother's proposed move constitutes relocation within the meaning of § 5322(a) and she is not entitled to relief on her first claim.

■ In her final two claims, Mother asserts that she met her burden of establishing that the proposed move is in the best interest of Child. Mother resided in the Albion area, a distance of 68 miles from her current residence in Grove City, for her entire life prior to her relationship with Father. Mother asserts that her father, mother, brother, two sisters, nieces, and nephews live in the Albion area, that the proposed move would facilitate a closer relationship between Mother's family and Child, and that Mother's family would also provide emotional support for Mother. Next, Mother contends that she has the prospect of a job with an insurance company in Girard, Pennsylvania, a town near Albion, where she will earn as much as she currently earns in Grove City, with the possibility of becoming a part owner of the insurance company in the future. Mother has also found a residence in Albion, which she will rent from a client in order to be near family and prospective clients, and has investigated schools for Child to attend in the Albion area. Mother claims that, notwithstanding Father's involvement in Child's activities, the foregoing benefits of the proposed move confirm that relocation is in Child's best interest, particularly in view of Father's past abusive conduct toward Mother.

Section 5337(h) of the Act lists the factors the trial court must consider in deciding whether to grant relief to a parent who seeks to relocate with a child.[1] It states:

1. The Act also provides that the relocating    party carries the burden of proving that "relo-

**(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h). In arriving at its decision concerning relocation, the trial court must consider the factors contained in § 5337(h) and give "weighted consideration to those factors which affect the safety of the child." *Id.*

The evidence reveals that Child and Father have a strong support system in Grove City, coming not only from Father's father and stepmother ("Paternal Grandparents") but also from other relatives in the Grove City area. The trial court properly observed that the family support system has served Child well, to the point that Child is progressing in school and in all other aspects of his life. Child has dinner with Father and Paternal Grandparents every Wednesday night. N.T., 8/18/11, at 82–83.

Testimony adduced at trial also reveals that Mother has continued to have contact with Paternal Grandparents and has continued to attend weekly Monday night dinner with Child at Paternal Grandparents' home. *Id.* at 52–53. In addition, Paternal Grandparents watch Child whenever Mother needs them to provide child-sitting services. *Id.* at 82–83. The evidence presented shows that Child does not have an equally strong support system from Mother's family in the Albion area, and will have to adjust to Mother's family, as well

cation will serve the best interest of the child as shown under the factors set forth in subsection [h]." 23 Pa.C.S.A. § 5337(i)(1). Both

parties have the burden of proving that their positions possess integrity. *Id.* at § 5337(i)(2).

as to his new neighborhood, school, and surrounding area. N.T., 8/18/11, at 12.

In addition, the trial court determined and the evidence supports the finding that the advantages of the proposed move are minor, at best. The trial court found that there would be some improvement in Mother's life if she were to relocate as she would be near her family and would reduce any turmoil arising from her relationship with Father. However, the court noted that Mother would lose benefits provided by Father's family, and Mother must still communicate with Father concerning Child. Mother's assertions concerning economic improvements are also speculative since she will earn approximately the same amount of money from her new employer, has no definite commitment from the insurance company concerning the partnership, and would pay a slightly smaller amount of rent. N.T., 8/18/11, at 12–19; *see also* 23 Pa.C.S.A. § 5337(h)(6).

The trial court also found that the evidence belies Mother's assertion that Child would have much to gain from the move to Albion. The trial court concluded that the move would have a negative impact on Child's emotional development and on his bond with Father and other relatives and friends. Moreover, Child had already begun to establish himself with a course of study and friends in the Grove City school and with his extracurricular activities. Trial Court Opinion, 11/1/11, at 16. Child is excelling academically and is being considered for the gifted program in the Grove City School District. N.T., 8/18/11, at 73. The Court determined that there was no evidence that Child would gain anything at this time in Albion, where he has no established support system in place, not having spent much time with Mother's family or in the area itself. N.T., 8/18/11, at 44. 23 Pa.C.S.A. § 5337(h)(7).

Mother acknowledges that relocation would eliminate Father's Wednesday night periods of partial custody but alleges that Father could be adequately compensated by other additional periods of partial custody. However, the trial court noted that Mother's proposed custody arrangement eliminates weekdays that have been critical for providing Child an opportunity to bond with Father and his extended family, and would negatively impact Child and jeopardize his relationships with Father, Father's family, and his friends. Trial Court Opinion, 11/1/11, at 14–15.

The trial court opined that neither Mother's motive for seeking to relocate nor Father's motive for preventing the relocation is disingenuous. 23 Pa.C.S.A. § 5337(h)(8). Moreover, Child's preference was not a factor in this case. At the time of the hearing, Child was six years old and in the second grade, and both Mother and Father waived a court interview with Child. *See* 23 Pa.C.S.A. § 5337(h)(4); Trial Court Opinion, 11/1/11, at 16; N.T., 8/18/11, at 4.

Finally, the trial court recognized that a PFA Order was granted at Mother's request on March 18, 2009, for a period of 12 months following a hearing where Father had entered Mother's home to check her cell phone for male callers and shoved Mother onto the porch. Criminal charges were filed, and Father pled guilty to harassment and disorderly conduct, misdemeanors of the third degree. Charges were also filed against Father by Mother arising out of an incident that occurred on May 20, 2011, when Mother told Father that she wanted to relocate to Albion. Father allegedly remarked that "I could just punch you." Trial Court Opinion, 11/1/11, at 5. Harassment charges are still pending against Father as to the May 20, 2011 incident. It is also undisputed that Father has called Mother foul names in the pres-

ence of Child. In June 2011, when Mother and Father were together at Child's baseball game, Father was angry with Mother's friend from Albion who was present at the game, and reached into the car and punched and swore at Mother's friend in the presence of Child. N.T., 8/18/11, at 20–33.

The evidence reveals, however, that Father has not assaulted or abused Child at any time. Similarly, Mother agrees that Child is safe in Father's care. The record also shows that, in 2009, after Father pled guilty to two misdemeanors of the third degree and after she had filed a PFA against Father, Mother invited Father to move back in with her and Child and attempted to reconcile. Mother and Father lived together for 8 of the 12 months that the PFA was in effect. Moreover, in 2011, Mother consented to the withdrawal of the PFA and agreed to change the custody order by making their exchanges of custody in a public place. N.T., 8/18/11, at 32–33; Trial Court Opinion, 11/1/11, at 15.

Accordingly, the trial court conceded that Father obviously has issues pertaining to his temper and foul mouth. The trial court found, however, that Father's anger was directed toward Mother and her actions, and did not have much impact on Child or his safety. Trial Court Opinion, 11/1/11, at 16. The trial court noted that a more appropriate remedy would be for Mother to have the court direct Father to attend anger management counseling and implement other conditions to isolate Mother from Father's inappropriate comments and concerns that she has from his conduct in the past. *Id.;* 23 Pa.C.S.A. § 5337(h)(9).

Therefore, after a careful review of the record certified on appeal, we conclude that the trial court did not err in finding that Mother failed to meet her burden of proving that relocation to Albion with

Child, together with a related modification of the parties' custody arrangement, would be in Child's best interest. *See Landis, supra.*

Order affirmed.