J-A16016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.A.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| G.P. | : | No. 1563 MDA 2020 |

Appeal from the Order Dated December 1, 2020
In the Court of Common Pleas of Luzerne County Civil Division
at No(s):  2018-05417

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED SEPTEMBER 08, 2021**

This custody matter concerns the parties' natural son, G.P.S. (Child), born in June 2015.  S.A.T. (Father) appeals from the order entered in the Luzerne County Court of Common Pleas, which (1) granted the petition of G.P. (Mother) to relocate to Bayonne, New Jersey, with Child; and (2) modified the shared physical custody award to grant Mother primary physical custody.[1] Father avers the trial court abused its discretion in: (1) weighing the evidence

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We note the terms of the present custody award were set forth in an order issued November 23, 2020.  However, the trial court issued an amended order on December 1, 2010, the full text of which merely corrected a typographical error in the November 23rd order.  The present appeal is taken from the latter, December 1st order.

Additionally, we note that throughout these proceedings and on appeal, both parties are represented by counsel.

in Mother's favor with respect to the Child Custody Act's[2] Section 5337(h) relocation factors; (2) not finding two Section 5328(a) best-interest factors in his favor; and (3) directing the custody arrangement to begin nine months prospectively. We affirm.

## I. Facts & Procedural History

Mother and Father were never married, and were no longer in a romantic relationship when Child was born in June of 2015. N.T., 11/18/20, at 18, 21. Father has been a part of Child's life in all but the first month of his life. *Id.* at 86. Mother married another man, A.P., and has two younger children (Child's half-siblings), born in approximately 2016 and 2018. *See id.* at 14, 53. They lived in Hazleton, Luzerne County, though Mother and A.P. subsequently separated. *Id.* at 53. Meanwhile, Father and his paramour had a child together in 2017. They likewise lived in Hazleton.

On July 3, 2018, when Child was three years old, the trial court entered a custody order by agreement of the parties. The order granted shared legal custody, and shared physical custody on an alternating weekly basis. That same month, Mother moved to Bayonne, New Jersey, with Child and her two younger siblings. N.T. at 12. Bayonne is near New York City, and approximately 150 miles and a two-hour drive from Hazleton. *Id.* at 25, 81.

---

[2] 23 Pa.C.S. §§ 5321-5340.

Mother and the children moved into the home of her uncle, his wife, and their three children. *Id.* at 15.

On February 7, 2019, Father filed a petition for special relief, averring Mother moved the Child to Bayonne, New Jersey, without his consent or court approval. Although the certified record and trial docket do not include any disposition for this petition, Father's counsel averred, at the underlying hearing, to the following: a hearing was held on the petition, and the parties reached an agreement that Mother could exercise her physical custody in Bayonne, but if Mother later wished for Child to attend school there, she would formally petition for relocation.[3] N.T. at 7.

On July 7, 2020, Mother filed a notice of proposed relocation, "requesting Court approval to relocate to Bayonne, New Jersey, with . . . Child," who was then five years old. Mother's Notice of Proposed Relocation, 7/7/20, at 2. Mother averred that Child would begin kindergarten that fall in Bayonne, and the relocation would provide Mother a better financial opportunity and Child a more stable home life and better educational opportunities. *Id.* at 3.

---

[3] According to Father's counsel, Judge Rogers ordered Mother to return Child to Hazleton, and subsequently Judge Pierantoni conducted a hearing. N.T. at 17. Meanwhile, the Honorable William Amesbury presided over the instant relocation proceedings.

On August 21, 2020, Mother filed an emergency petition for special relief, requesting a temporary order of primary physical custody. On September 4th, Father filed a counter-affidavit, objecting to the relocation and modification of the existing custody order. By *interim* order dated September 14, 2020, the trial court directed that: (1) the parties continue to follow the existing order; and (2) Child start the 2020-2021 academic year in the Hazleton Area School District, where classes would be virtual due to the COVID-19 pandemic.

The trial court conducted a hearing on November 18, 2020. Mother appeared by telephone and Father in person, both represented by counsel. Mother testified to the following. Child was then five years old and his two half-siblings were four and two years old. N.T. at 15. They have been living in a single home in Bayonne, New Jersey, since July of 2018 with her aunt, A.R. (Aunt), uncle, and their children, who were then 19, 14, and 11 years old. *Id.* at 12, 15. Mother and her three children live on the first floor of the house, and the other family members live on the top floor. *Id.* at 16. Child shares a bedroom with his brother. *Id.* at 16. The house is "in a nice neighborhood[,]" close to transportation and a park. *Id.* at 14. The house was also two blocks from the public school Child would attend, which was a "Blue Ribbon" school. *Id.* at 14, 30. Mother gives her aunt $500 per month for rent and "helps with the groceries." *Id.* at 76 (testimony of Aunt).

Both parties testified that Child has a speech delay or a speech issue. N.T. at 28, 99. *See id.* at 99 (Father explaining, "[Child is] saying three consecutive words and making a sentence now."). Mother testified to the following: during her custodial weeks, Child attends speech therapy, twice per week, which was provided through the children's hospital in Bayonne, New Jersey. *Id.* at 28. If Child were to attend the school in Bayonne, he would have one hour of "speech class[ ]" every day in school. *Id.* at 33. Mother believed this speech therapy is "something that [Child] needs." *Id.*

Finally, Mother testified she had an unhealthy and "toxic" relationship with her ex-husband, and relocated to have better support and "to move on." N.T. at 14. Mother also wanted to "better [her]self for the sake of" her children, and Bayonne is safer than Hazleton. *Id.* at 42. Mother did not have any connection to Hazleton aside from transporting Child to Father's home, but she has "a good family support system in Bayonne." *Id.* Mother works six to seven days a week as an associate at a Lowe's Home Improvement store, from 4:00 p.m. to 11:00 p.m. *Id.* at 13, 61. Mother testified that Child has "remarkable, outstanding" relationships with his half siblings and Mother's uncle and aunt. *Id.* at 16. Mother's aunt testified that she is "like [Child's] other mother" and she takes care of him when Mother is working. *Id.* at 77.

Father testified to the following. He lives in Hazleton with his girlfriend, J.F., and their three-year old daughter, as well as Child during his custodial weeks. N.T. at 85. Child has a "fantastic" and "very strong" relationship with

J.F. and an "incredible" bond with his half-sister. *Id.* at 96-97. Father is a patrolman for the local police department, and works weekdays from 3:00 p.m. to 11:00 p.m. *Id.* When Father is at work, J.F. watches Child. *Id.* at 97.

Father further testified as follows. Following the July 3, 2018, custody order, Father enrolled Child in the Hazleton Area School Intervention Program to address his speech delay. *Id.* at 98. Child has an IEP for learning support and attends speech therapy once a week during Father's custodial time *Id.* at 100, 122. Child was in kindergarten and had virtual instruction weekday afternoons. *Id.* at 97, 101. However, Father acknowledged that Child's grades were "not good." *Id.* at 118. Father explained:

> [Virtual instruction is] very difficult on [C]hild. I understand you guys are trying to do eight[-]hour days, but these are five-year-old kids that we're talking about. How do you expect them to sit on a computer screen for eight hours? Three hours is tough. And it's at home so there's going to be distractions. . . .

*Id.* For example, Father testified that Child recently scored "three out of ten" on identifying numbers and "five out of twenty-seven letters" on identifying letters. *Id.* at 119. Child's teacher told Father to "[k]eep doing the work over and over" with Child. *Id.* at 120. Father and J.F. equally share the duties of Child's virtual learning, while J.F. does more homework due to Father's work schedule. *Id.* at 123. Finally, we note J.F. also testified.

On November 23, 2020, the trial court issued the underlying order: (1) granting Mother's petition to relocate with Child to Bayonne, New Jersey; and

(2) granting Mother primary physical custody of Child, to begin eight months later on August 15, 2021;[4] and (2) granting Father physical custody two weekends per month and six weeks over the summer, to begin September 2, 2021. The court's accompanying opinion reviewed all of the Child Custody Act relocation factors under Section 5337(h), as well as the general custody factors under Section 5328(a). The court issued an amended order on December 1, 2020, to correct a typographical error. **See** n. 3, **supra**.

Father filed a notice of appeal on December 21, 2020, but did not simultaneously file a Pa.R.A.P. 1925(a)(2)(i) a concise statement of errors complained of on appeal. On January 4, 2021, this Court directed him to file a concise statement, and Father timely complied. Therefore, we address his questions on appeal. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) ("[T]he failure of an appellant in a children's fast track case[,] to file contemporaneously a concise statement with the notice of appeal pursuant to [Pa.R.A.P.] 905(a)(2) and 1925(a)(2), will result in a defective notice of appeal[, the disposition of which] will then be decided on a case by case basis.").

---

[4] The text of the November 23, 2020, order stated that Mother's primary physical custody was to begin "August 15, 2020." Opinion & Order, 11/23/20 (Trial Ct. Op.), at 1. The court subsequently issued an amended order, correcting this date to "August 15, 2021." Amended Order, 12/1/20.

## II. Statement of Questions Involved

Father presents the following issues for our review:

A. Whether the trial court erred and abused its discretion in granting the petition of [Mother] to relocate with [Child] to Bayonne, New Jersey, since Mother did not meet her burden of proving that the relocation will serve the best interest of [C]hild as required by 23 Pa.C.S.A. § 5337, and where the application of the relocation factors under 23 Pa.C.S.A. § 5337 should have resulted in Mother's petition for relocation being denied?

B. Whether the trial court erred and abused its discretion in awarding Mother primary physical custody of [C]hild, since an analysis of the custody factors under 23 Pa.C.S.A. § 5328 should have resulted in the Court maintaining the current shared physical custody arrangement, as that is in [C]hild's best interest, since [C]hild is thriving under the current custodial situation?

C. Whether the trial court erred and abused its discretion in awarding Mother primary physical custody of [C]hild as of August 15, 2021, since the court does not know what will be in the best interest of [C]hild at that future date, and the circumstances of the parties and [C]hild may be completely different at that time?

Father's Brief at 8-9.

## III. Standard of Review & Applicable Law

We note the standard of review of child custody matters:

Our paramount concern and the polestar of our analysis in this case, and a legion of prior custody cases is the best interests of the child. The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual wellbeing. On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if

they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

Further, on the issues of credibility and weight of the evidence, we defer to the findings on the trial judge. Additionally, appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record.

*Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

It is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion in awarding custody to the prevailing party.

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (citation omitted).

Child custody actions are governed by the Child Custody Act. When considering a petition for relocation that also involves a custody decision, a trial court must consider both the relocation factors under Section 5337(h) and the best interest factors under Section 5328(a). *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013).

We first consider Mother's request to relocate with the Child, where she in fact had already been living in Bayonne, New Jersey for two years (July 2018 through July 2020), and exercising her alternate-weekly physical custody of Child there. This Court has held, "[W]here neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 . . . is not *per se* triggered." *D.K. v. S.P.K.*, 102 A.3d 467, 474 (Pa. Super. 2014). We explained:

In a custody case where neither parent is relocating, but the children stand to move a significant distance, trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interests analysis. Several of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a). Trial courts should also consider those relevant factors of section 5337(h) that are not otherwise encompassed directly or implicitly by the section 5328(a) factors pursuant to the catchall provision of section 5328(a)(16).

*Id.* at 476-477.

When Mother filed her notice of proposed relocation, she was not moving, but rather sought primary physical custody so that the Child could enroll at her local school. Thus, Section 5337 was not *per se* triggered. **See D.K.**, 102 A.3d at 474. Nevertheless, we conclude the trial court properly considered all of the Section 5337(h) relocation factors, in addition to the Section 5328(a) best interest factors.

We first set forth the Section 5328(a) custody factors to be considered:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 10 -

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

Section 5337(h) sets forth the factors a trial court shall consider when presented with a petition to relocate:

**(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h)(1)-(10).

This Court has stated:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order."  23 Pa.C.S.A. § 5323(d).  Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." Section 5323(d) applies to cases involving custody and relocation.

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."  A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (some citations omitted).

**IV.  Trial Court's Assessment of Statutory Factors**

For ease of review, we first review the trial court's reasons for granting Mother's petition to relocate and awarding her primary physical custody.  The trial court first considered the Section 5337(h) relocation factors.  The court found the following factors inapplicable: (4) (child's preference, as Child was

- 13 -

five years old); (5) (any pattern of conduct to promote or thwart the relationship of the child and the other party); (9) (any present and past abuse); and (10) (catchall provision).

The trial court weighed the first relocation factor equally between the parties ("[t]he nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life"). It found:

> Mother has been involved with [C]hild since birth. Father had a brief period precluded from contact with [C]hild because of Mother's relationship with another man. [Child] has extensive extended family relationships with both parties. He is bonded with Father's daughter as well as with [his] two siblings [with] Mother. Since July of 2018, there has been alternating weeks of custody. [Child] is close to both paternal grandmother and maternal aunt and uncle.

Opinion & Order, 11/23/20 (Trial Ct. Op.), at 4.

The trial court weighed the following relocation factors in Mother's favor: (2), (3), (6), and (7). Specifically, with respect to subsection (2) ("likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child"), the court found:

> [Child] is 5 years old and the testimony is clear that he is a happy boy who is thriving despite the present custody arrangement. He does have a special need, specifically, he suffers from a speech delay. Both parents are taking him to therapists when they have custody. The most pressing issue is his need to start school in the near future. The Covid pandemic has facilitated the virtual education currently in the Hazleton school system. However, the

- 14 -

testimony convinces this Court that the available New Jersey public school is in the best interests of [C]hild. It is a Blue Ribbon School two blocks away from [Mother's] residence and appears to have a better program regarding therapy for his speech delay.

Trial Ct. Op. at 4-5. Under subsection (3) (feasibility of preserving the relationship between the nonrelocating party and the child), the court considered that Bayonne is approximately a 2-hour drive from Hazleton, and thus "[o]nce [Child] starts school in person, the relationship with Father will require weekends and substantial time when school is not in session[, including] holidays and summer." *Id.* at 5. The court stated it would "compensate [Father] to the fullest extent possible." *Id.*

With respect to the subsection (6) ("[w]hether the relocation will enhance the general quality of life for the party seeking the relocation") and subsection (7) ("[w]hether the relocation will enhance the general quality of life for the child") factors, the trial court found:

Mother has obtained a job as an associate of Lowe's. Pay is reasonable and she works full time, if not more. Living with Aunt and Uncle provides a support system and independence she doesn't have in Hazleton. She and her three [children] have an entire floor, two bedrooms, and their own bathroom. She believes Bayonne offers more opportunity and testified her neighborhood is safe without blight and has accepting neighbors. Mother was the victim of abuse in Hazleton and desired a fresh start.

\* \* \*

. . . As [Child] gets older, there appears to be greater opportunity because of location and proximity to New York City. Mother is in a better financial situation with a job and minimal housing cost of $500 per month living on the first floor of Uncle's home. Although [there is] significant quantity and quality of extended family support in both [locations], [it] appears to be greater in Bayonne.

- 15 -

Trial Ct. Op. at 6.

Finally, the trial court considered the subsection (8) factor ("reasons and motivation of each party for seeking or opposing the relocation") as follows:

> Mother wants to better herself and provide [a] better lifestyle for her children. [She d]oesn't like Hazleton and believes Bayonne is a great place to live. She feels she has a better support system in Bayonne. Father has a significant bond with [Child] and doesn't want to lose it[ nor] his family to lose it. He believes his family has been a support system for Mother in the past and would be again if Mother and [Child] returned to Hazleton.

Trial Ct. Op. at 6-7.

The trial court then considered all of the Section 5328(a) best interest-custody factors. The court found the following factors inapplicable: (2) (any present and past abuse); (7) (child's preference); (8) (any attempts by a parent to turn the child against the other parent); (13) (level of conflict between the parties and wiliness to cooperate); (14) (any history of drug or alcohol abuse); (15) (party's mental and physical condition); and (16) (any other relevant factor).

The trial court weighed the subsection (4) factor (need for stability and continuity in the child's education, family life and community life) in Mother's favor. The court found:

> [Child's p]resently living with either parent or continuing the current arrangement appears satisfactory. The issue of starting school is the triggering event for choosing one parent and location over the other. As explained above, it is in the best interest of [C]hild to be with Mother in Bayonne **when** the decision must be made.

Trial Ct. Op. at 8 (emphasis in original). The court likewise weighed the subsection (10) factor (which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child) in Mother's favor. It found: "[T]he parties are more than equal in their personal efforts to meet the above standard. However, this court is persuaded that the educational and special needs of the child may be better served in the Bayonne location." *Id.*

## V. Analysis of Father's Claims

## A. Section 5337(h) Relocation Factors

In his first issue, Father argues the trial court abused its discretion in weighing Section 5337(h) relocation factors in Mother's favor. He avers the trial court erred, with respect to subsections (2) and (7), that attending the Bayonne school is in Child's best interest. Father's Brief at 21. In support, he maintains there was no evidence that the Bayonne school was better than Child's Hazleton's school, no expert testimony comparing the schools, and no evidence aside from "a note on the sign in front of the [Bayonne] school building . . . that it is a blue ribbon school, with no admitted evidence explaining what that actually means." *Id.* at 22. Father adds "there was no witness from the school" about the speech therapy offered. *Id.* Meanwhile, Father contends, Child has only attended school in Hazleton, he has an IEP due to his special needs, and virtual schooling "is hard for a child that age." *Id.* at 23. With respect to the subsection (3) factor ("[t]he feasibility of

preserving the relationship between the nonrelocating party and the child"), Father points out his alternate-weekly custody will be "significantly" reduced to every-other weekend, which will hurt his relationship with Child. *Id.* at 24. Father also points out that whereas Child now makes the Hazleton-to-Bayonne trip once per week, the new custody arrangement would require two trips in one week (one to Hazleton and one back to Bayonne). *See id.* Relatedly, Father asserts the amended custody order does not, as the trial court averred, "compensate [him] to the fullest extent possible." *Id.* at 24-25. Finally, Father states that, on Child's birth certificate, Mother listed her husband as Child's father, and she would not allow him to see Child.[5] *Id.* at 25. Father also claims "Mother did not move for better financial[,] emotional[,]or educational opportunity," but rather "to escape an abusive relationship with her husband." *Id.* at 26. Father reasons that Mother could stay in the Hazleton area, because: Mother has a protection from abuse order against her husband; she could have "just as easily" obtained a job at Lowe's in Hazleton; Mother did have emotional support in Hazleton — her mother. *Id.* After careful review, we conclude no relief is due.

_____

[5] At the hearing, Father testified that: Mother listed her husband as Child's father on the birth certificate; Father "fought . . . to get a paternity test;" and the paternity test revealed that Father was Child's biological father. N.T. at 86.

Father's arguments are essentially an appeal to this Court to reweigh the evidence presented — or reach a factual finding based on evidence not presented — in his favor. This we cannot do, as we defer to the trial court on issues of credibility and weight of the evidence, and we may not "nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court." *See Saintz*, 902 A.2d at 512. Here, the trial court credited Mother's testimony that the elementary school in her area is a "Blue Ribbon" school, which she described as "a certification" provided annually to select schools. *See* N.T. at 14, 37. The court also credited Mother's testimony that Child would receive daily speech therapy in the Bayonne school, and that this therapy is something that he needs." *See id.* at 33. While Father argues there was no evidence comparing the two schools, he does not explain why he did not present evidence regarding the quality of the Hazleton school or the speech therapy programs available in Hazleton.

The trial court also emphasized the emotional support that Mother would receive in Bayonne, from the family members with whom she currently lives. While Father argues Mother's mother provided her with emotional support, Father's Brief at 26, Mother testified, "I don't have anybody living in Hazleton. I don't have anything to do with Hazleton besides dropping and picking up my son at his father's." N.T. at 42. The trial court was free to weigh this testimony. *See Saintz*, 902 A.2d at 512.

Finally, we note that in arguing he will have "significantly less" time with Child, and that this will hurt his relationship with Child, Father relies on **C.M.K. v. K.E.M.**, 45 A.3d 417 (Pa. Super. 2012). In that case, the mother petitioned to relocate from Grove City, Mercer County, to Albion, Erie County — and a related request to modify the custody terms for the parties' six-year-old son. **Id.** at 420. The distance from the father's to the mother's proposed new home was 68 miles. **Id.** The trial court denied the mother's petition, finding in part: (1) the child did not have an equally strong family support system from the mother's family in the Albion area as he did from the father's family in Grove City; (2) the move would have a negative impact on the child's emotional development; and (3) the child was excelling academically, and he was being considered for the gifted program in the Grove City School District. **Id.** at 428. **Id.** at 429. Pertinently, the trial court determined "there was no evidence that [the child] would gain anything at this time in Albion, where he has no established support system in place, not having spent much time with [the mother's] family in the area itself." **Id.** at 428. On appeal, this Court affirmed.

Father emphasizes that the trial court in **C.M.K.** also found that the mother's proposed relocation would significantly impair the father's ability to exercise custody. In that case, the father had partial physical custody on alternating weekends and has dinner with the child one weeknight. **C.M.K.**, 45 A.3d at 420, 427. Here, Mother has relocated 150 miles away, and Father

has exercised equally shared physical custody on an alternating weekly basis. Father asserts, therefore, that there is even more reason here than in *C.M.K.* to deny Mother's request for primary physical custody. We disagree and conclude that *C.M.K.* is distinguishable.

In contrast to the child in *C.M.K.*, Child was not excelling in school, and has a speech delay. The elementary school in Bayonne is a "Blue Ribbon" school, and Mother testified that he would receive speech therapy daily in the school. In addition, unlike the facts in *C.M.K.*, the trial court here found that Child has a "significant quantity and quality of extended family support [in] both [ ]locations, [it] appears to be greater in Bayonne." *See* Trial Ct. Op., at 6. The record supports this finding, and we may not conclude "whether the trial court reached the 'right' decision," but rather "we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations," the trial court abused its discretion. *See King*, 889 A.2d at 632.

Lastly, there was no evidence presented in this case that there would be a negative impact on Child's emotional development if he was to reside primarily with Mother in Bayonne. As such, we conclude that *C.M.K.* does not require a reversal on appeal in this case. Based on our review of the record evidence, we discern no abuse of discretion by the court with respect to the Section 5337(h) relocation factors. The trial court carefully considered the

evidence in light of Child's best interests and fashioned an order that preserves his relationship with Father.

## B.  Section 5328(a) Best Interest Factors

In his second issue, Father argues that the court abused its discretion in relying "on only two factors, 4 and 10, in reaching its decision to award Mother primary physical custody[.]"  Father's Brief at 32.  Father refers us to the argument, under his first issue, that the court abused its discretion in relying on Mother's testimony that the Bayonne school is a "Blue Ribbon" school and offers a better program for speech therapy.  We disagree.

Our review of the record reveals the trial court carefully considered all of the Section 5328(a) best interest factors.  We may not disturb the court's credibility findings, nor the weight that the court placed on them.  ***See Saintz***, 902 A.2d at 512; ***see also M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013) (citation omitted) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.").  Further, as stated above, the record reveals that Child struggled with the kindergarten school work and with a speech delay.  We conclude that the court reasonably determined the school in Bayonne is in Child's best interests and granted Mother primary physical custody as result.  Father's second issue fails.

## C. Prospective Custody Award

In his third and final issue, Father challenges the prospective nature of the trial court's November 23, 2020, custody order, which directs the new custody schedule would begin the following August. He argues, "For the trial court to issue an order that starts in approximately nine months is misguided and an abuse of discretion. The court can't possibly know what the circumstances of [C]hild and the parties will be as of August 15, 2021." Father's Brief at 34. For example, Father contends, the court does not know whether Mother will still be living in New Jersey or whether the New Jersey school will have virtual or in-person instruction. *Id.*

Father's entire argument spans two paragraphs and cites no legal authority. We deem Father's issue waived for failure to present any statutory or case authority in support of his argument. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority); *see also* Pa.R.A.P. 2119(a).

Even if Father did not waive this issue, we would not disturb the order. This Court has stated:

> Child custody orders are temporary in nature and always subject to change if new circumstances affect the welfare of a child. The Commonwealth has a duty of paramount importance, to protect the child's best interests and welfare. To that end, it may always entertain an application for modification and adjustment of custodial rights.

*Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

The trial court scheduled the new custody arrangement to coincide with the commencement of the school year. If, in the future, Father determines that Child's best interests are not served by the school in Bayonne or by being in Mother's primary physical custody, he may file a petition to modify the custody order. Father's observation that circumstances may evolve, without more, is no basis to disturb the current order.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2021